[Civ. No. 8308.   Third Dist.   May 19, 1954.]

JUNE C. MASON BRIDGES, Respondent, v. GARY H. BRIDGES, Appellant.

Bruce A. Werlhof for Appellant.

J. Oscar Goldstein, P. M. Barceloux, Burton J. Goldstein and Goldstein, Barceloux & Goldstein for Respondent.

VAN DYKE, P. J.—Responsive to the pleadings the trial court made the following findings of fact: In February of 1946, plaintiff-respondent and defendant-appellant began living together as husband and wife and continued in that state until August of 1950. Respondent obtained a final decree of divorce from her former husband on February 16, 1948. Appellant had often promised her that he would marry her immediately after her divorce became final. She relied upon these promises and continued her relationship with appellant during all of the said period from the 16th of February, 1946, to August, 1950. A son was born to them December 13, 1948. During the entire period the parties worked together with the common purpose and design of accumulating property, money and other assets and they agreed verbally that they would do so and would pool their joint assets, work, labor and services. By virtue of their common efforts they acquired real property in Chico and in Redding and certain personal

property. The value of the Chico real property was about $8,000 and the value of the Redding real property was about $7,500. When they began living together appellant had little financial means and the parties agreed that he would continue to work as a salesman, and that she would contribute her earnings and services for their mutual benefit. Appellant had never shared and had refused to share the earnings and accumulations which the two had acquired, although respondent had repeatedly asked for such division. Appellant had refused to support the child born to the couple, and had threatened, if she should attempt to secure any part of their property, to dispose of the same and leave the state to escape the jurisdiction of the state's courts. Respondent was a fitting and proper person to have the sole care and custody of the minor son of the parties. Defendant was able-bodied and gainfully employed and able to pay for the support of said child the sum of $50 per month. From February 16, 1946, to August, 1950, respondent had performed services for defendant, including all the duties of a housewife and that the reasonable value of such services exceeded or equaled the value of the Chico real property.

Judgment was entered whereby the court divided the property between the parties, assigning to respondent the Chico real property, with the furniture and equipment located in the residence, and to appellant the Redding real property and certain personal property. Respondent was given the custody of the minor son of the parties and appellant was ordered to pay to her for his support $50 per month. From that judgment this appeal is taken.

Appellant first contends that the evidence was not sufficient to support the finding of the court that there was an agreement between the parties to combine their assets and earnings and acquire property for their mutual benefit. This contention cannot be sustained. The evidence throughout on almost every issue was conflicting. It consisted mostly of the testimony of the parties themselves. We must, of course, disregard conflicts and, doing so, the following appears in the record upon the matter of the agreement: Appellant was discharged from the armed services in January, 1946. Respondent and her husband were then living with his parents at Auburn, the husband having been injured and being unable to work. The couple had three children. Appellant visited them in Auburn. He had purchased a three-room house in Chico in 1943, upon which he had paid $300, plus $30 per month. He

also was married and had three small children. He proposed that respondent come to Chico with her three children and take care of his house and the six children. It appears that the domestic relations of each were unhappy with their respective spouses and in the words of respondent: "I was going to get my divorce and he was getting his divorce and then as soon as the divorces were final he was to marry me, and I was to take care of his children and he said, the very words he said, 'I will be a father to your children and you will be a mother to mine'." She was then asked: "Did you have any arrangement with him with respect to property or anything that was acquired during this relationship." She answered: "Everything was supposed to be 50-50." It appears that for four and a half years respondent kept this bargain and it is a fair inference that her work and services thereunder were a material factor in the success the parties had in the accumulation of property. The record contains testimony as to many things the two did in the acquisition and improvement of property which afford fair inference that an agreement, such as that to which she testified, existed. It further appears that in August, 1950, he left her and married another woman; that he went with his wife to reside in the Redding property, leaving respondent with her own children, including the minor son of the two, in the Chico residence and that she continued to occupy that property without any demand made upon her by him respecting her use of it. More could be gleaned, but more is unnecessary, to show that the finding of the court as to the making of the agreement between the parties is justified by the record. ■ "If a man and woman live together as husband and wife under an agreement to pool their earnings and share equally in their joint accumulations, equity will protect the interests of each in such property." (*Vallera* v. *Vallera,* 21 Cal.2d 681, 685 [134 P.2d 761], and cases cited.) The foregoing rule of law was properly applied by the trial court to the situation it found to have existed.

Appellant contends that as a matter of law the agreement found to have existed between the parties was unenforceable for having been made in contemplation of and because of the promise of meretricious relationship. There is nothing in the record which furnishes a basis for this contention. Neither party testified that there was any agreement that the parties would pool their assets and share their accumulations in contemplation of meretricious relations nor do the findings of the court contain such matter by implication.

Appellant's own testimony concerning what happened when respondent and her children came to appellant's Chico house was the following: "The reason they came down there was the fact they had been earning nothing, were living [at Auburn] off their parents up there, I had the house, needed someone to take care of my children, so we struck a bargain, it was 50-50 on everything, I furnished the house and half the groceries and half the utilities and they were to furnish the rest, that was the whole deal." It was appellant's contention that the agreement was not between himself and respondent but between himself and respondent's husband, but on this matter his testimony is in conflict with that of respondent. Nowhere is it expressly testified to by anyone that there was anything in the agreement for the pooling of assets and the sharing of accumulations that contemplated meretricious relations as any part of the consideration or as any object of the agreement. ■ As the court said in *Hill* v. *Estate of Westbrook*, 95 Cal.App.2d 599, 602 [213 P.2d 727]:

"Although the parties live together in illicit relationship during the time the services are performed, an express contract to compensate for services performed as a housekeeper has been held valid and enforceable unless made in contemplation of such illicit relationship."

■ It was also said in *Garcia* v. *Venegas*, 106 Cal.App.2d 364, 368 [235 P.2d 89]:

". . . But when, as here, they entered into a contract to pool their work and earnings and share equally in the property accumulated therewith, and the illicit relationship was not so involved in the contract as to render it illegal, the law recognizes the contract and enforces the rights arising out of it. Such a joint business enterprise, somewhat akin to a partnership, is one which any two persons (two women or two men, for example) might undertake."

The situation which the court found here to exist squares with the foregoing statements of the rule that permits the enforcement of contracts such as this record shows, notwithstanding the performance of that contract may be contemporaneous with meretricious relations.

Appellant complains that the property division made by the court finds no support in the record and he notes particularly that there was no specific finding as to the value of the property awarded to each party to the agreement and no specific finding as to the reasonable value of plaintiff's services which, as we have seen, the court did find equal

in value to the property which respondent took under the judgment. There was evidence that the Redding residence awarded to appellant represented an equity of $4,500; that the furniture in it was valued at $1,000; that there was given to appellant a Norge refrigerator valued at $750, a new Ford car valued at $1,368.50, an airplane worth $700 and a bank account of $50. In addition he took a life insurance policy and a motorcycle which were unvalued. The valuation totaled $8,368.50. There was testimony that the Chico residence and contents awarded to respondent were worth approximately $8,500. When we consider that testimony as to values are never more than approximations, it does not appear from the record that there was anything inequitable in the division worked out by the trial court.

Appellant complains that the court awarded to respondent property which appellant had contracted to buy before the agreement was made between himself and respondent. It was in evidence that three years before the agreement was made appellant had entered into a contract to purchase the Chico residence, had paid $300 down and agreed to pay $30 per month so that he had an equity in the house at the time the agreement was made of approximately $1,300; but it was also in evidence that when the parties went to this house to live they added two bedrooms and purchased furnishings, all of which respondent testified was paid for from their earnings, expending on the house in this way several times the amount of appellant's equity. Also the agreement was that the parties would pool their assets and that they would thereafter own everything, equally. Under these circumstances, there was no error by the trial court when it ignored the state of the legal title and made equitable distribution as it did.

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.