[Civ. No. 16870. First Dist., Div. One. Dec. 17, 1956.]

JOYCE FERRARO, Respondent, v. EDWARD FERRARO, Appellant.

George H. Barnett and Martin S. Walsh for Appellant.

Boccardo, Blum & Lull and Edward J. Niland for Respondent.

WOOD (Fred B.), J.—Defendant has appealed from a judgment awarding plaintiff an undivided one-half interest in certain properties, directing him to execute and deliver documents to effectuate the transfer of said interest to her, enjoining him meanwhile from making any other disposition of the property, and awarding her the sum of $1,000 and costs of suit.

The judgment is predicated upon these findings: (1) Commencing in May, 1948, the parties "entered into an oral agreement, whereby they would work together with the common purpose of pooling their work and earnings in order to accumulate property, money and other assets, and they would share equally in all such property, money or other assets accumulated thereby"; (2) Commencing in May, 1948, and until about June 21, 1954, they worked together for said purposes; (3) The property thus accumulated consists of (a) certain improved residential real property, (b) furniture, furnishing, and appliances thereat, (c) an undivided two-thirds interest in an auto-car Diesel truck trailer and Freuhauf Van Trailer, (d) a 1949 Cadillac convertible automobile, (e) a flatrack trailer, and (f) $2,000 on deposit in defendant's bank account at the time of the separation of the parties; (4) The real property was conveyed to the parties as tenants in common; in June, 1953, defendant represented that he intended to sell and requested plaintiff to execute a deed to him to facilitate the sale; in reliance thereon she executed a deed; and althoguh she demanded reconveyance

of her undivided one-half interest he refused to do so; (5) Plaintiff demanded conveyance of her interest in the property but defendant refused to convey and has threatened to dispose of the property and will do so unless restrained; and (6) Beginning May 18, 1948, and until June 21, 1954, the parties lived together as husband and wife.

Appellant claims the evidence does not support the findings and that the trial court erroneously failed to determine certain equities of the parties.

■ The finding as to the making and carrying out of the agreement to pool their work and earnings, sharing equally in the accumulations, is amply supported by the evidence. Defendant cites plaintiff's testimony, upon direct examination, that "we both came to an agreement . . . that we would work together, save our money and maybe later on get married and have something to start on." He claims an agreement to save their money was not an agreement to pool their work and earnings. That is taking a too narrow view of saving "money," which conceivably might be by investment in real and personal properties, not alone by deposit in a bank. Moreover, upon cross-examination defendant asked plaintiff when the agreement described in her complaint (the same as found by the court) was made. She could not remember the date exactly but said about a month and one-half after May 18, 1948, they began talking about their future together. Defendant then asked, "the agreement, then, was that both of you were to work and that for the common purpose you would pool your earnings, in order to accumulate property?" and she replied, "That is correct." Defendant would discount the latter testimony as inconsistent with plaintiff's testimony on direct, a question which the trial court in the exercise of its function as trier of the facts decided adversely to defendant.

Defendant claims the agreement was not carried out because as he says, "plaintiff contributed no money toward the acquisition of any of the properties listed." That is essentially the same argument as that which we have already discussed.

■ He next claims nonperformance because they did "not work together in the sense that they shared the same business . . ." That is placing too narrow an interpretation upon the terms of the agreement as found by the court. He continued in the operation of his trucking business. She kept house and part of the time worked as a waitress. Her earnings, it is true, did not go directly into the properties they acquired

but were used in part to defray household expenses. Those services, it would appear, operated to free for saving and investment some portion of the income derived from the trucking business. It is apparent that the trial court considered that by such conduct the parties did "work together with the common purpose of pooling their work and earnings" within the meaning of those words as used in the agreement. We think that is a fair inference and perceive no basis upon which a reviewing court could undertake to disturb it.

Defendant argues, somewhat obliquely, that the parties' meretricious relationship (living together as husband and wife though unmarried to each other) infected the entire transaction with illegality. He does not claim that the agreement depended upon the meretricious relationship. He argues, in effect, that the agreement proven was not performed and, therefore, her rights, if any, in the property depended upon proof of the amount of her contributions to its acquisition. This, in substance, is the same argument (nonperformance) in still another form.

█ In summary upon this branch of the case we endorse and quote from an opinion rendered by Honorable M. S. Del Mutolo, the judge who tried and decided this case:

"On the authority of *Bridges* v. *Bridges*, 125 Cal.App.2d 359 [270 P.2d 69], I am of the opinion that the plaintiff is entitled to judgment.

"As it is stated in the case of *Garcia* v. *Venegas*, 106 Cal. App.2d 364 [235 P.2d 89], tried by this court, '. . . But where, as here, they entered into a contract to pool their work and earnings and share equally in the property accumulated therewith, and the illicit relationship was not so involved in the contract as to render it illegal, the law recognizes the contract and enforces the rights arising out of it.'

"I am of the opinion that the parties hereto entered into such a contract as that mentioned in the two cases cited above. They bought property in their joint names and made an income tax return in their joint names. The plaintiff was known by defendant's name. It would be the most grievous injustice if this man, after using plaintiff as a dependent, to defraud the government on his income tax was allowed to keep everything that was accumulated by their joint efforts.

"It is defendant's contention that he contributed considerably more than she did. This may be true in a material way. The plaintiff, however, kept house, cooked his meals, and washed his clothes, the value of which cannot be measured in

dollars and cents. She was also employed most of the time.''

Defendant claims it was error to find plaintiff has a one-half interest in the house and lot because, he says, the $1,000 down payment came from moneys he saved prior to the period of the agreement. The portion of his testimony he cites is simply that he made the down payment with ''money that I saved with the truck,'' which could have been money saved after the commencement of their joint enterprise, especially as this down payment was made three years and some months after. Also, he admitted borrowing $4,700 to pay off the balance of the purchase price of his automotive equipment, over two years before making the down payment on the residence. This plus the fact that the real property was conveyed to and received by plaintiff and defendant as joint tenants, supports the finding under discussion. He also testified that in May, 1948, he had $1,800 to $2,000 in bank and no other property except his equity in certain automotive equipment. He testified he could get from the bank the amount of that deposit on that date in 1948 and undertook to do so but failed to produce it. In that connection, he did say he had close to $2,000 in bank on that date and ''That is what it took to put down on the house and buy the Buick.'' Even this statement falls short of testimony that he still had and used some part of the May, 1948, deposit in making the November 15, 1951, down payment on the house and lot. The finding that plaintiff deeded her interest in the house to him at his request to facilitate a sale and his refusal later to reconvey is amply supported by her testimony.

Some of the furniture came with the house and he paid off the balance due on the furniture after that.

In 1952 he bought the flatrack trailer for $800 with money that he had accumulated during the previous three or four years.

The Diesel truck trailer and Freuhauf Van Trailer (defendant described this equipment as ''a semi, a tractor and a semi-van'') defendant said he bought in March, 1948, for $12,500. As of May 7, 1948, he still owed $8,685.18; on June 5, $8,271.60; July 13, $7,858.02; and on August 3, 1948, $7,444.44. By March 5, 1949, it was fully paid for. It would appear that in finding that plaintiff has a half-interest in a two-thirds interest in this equipment the court took the May 7, 1948, figure; correct if May 18, 1948, was the date of the agreement. But, as we have seen, plaintiff's own testimony shows that the agreement was made and their joint enterprise launched about

one and one-half months later, which would increase the amount of his equity at the beginning of the enterprise and decrease the amount of her present interest in the property.

The evidence does not support the finding that defendant had $2,000 on deposit in bank when the enterprise terminated on June 21, 1954. Defendant testified that he had $42 or $48 in bank at that time; $200 at the time of trial; and that several friends owed him various amounts, such as $10, $12, or $15 each. True, he did not produce his bank books but that would not (contrary to plaintiff's suggestion) by use of the presumptions expressed in the Code of Civil Procedure, sections 2061, subdivision 6, 2061, subdivision 7, 1963, subdivision 5, and 1963, subdivision 6, support a finding of $2,000, upon which the award of $1,000 to plaintiff was based.

It will be necessary to remand the cause for redetermination of the date of the making of the agreement, the amount of plaintiff's interest in the Diesel and Freuhauf equipment, and the amount of money on hand upon termination of their joint venture.

■ Defendant urges that the court committed error in not adjusting equities arising subsequent to the termination of the enterprise. That was not error. Neither party requested it and no one furnished evidence on the subject. However, inasmuch as the cause must be remanded for consideration of certain limited issues, it is desirable that the parties be permitted to present for adjudication such claims as each may have against the other in respect to the common property, including but not necessarily limited to expenditures, if any, he has made for preservation of the property since the termination of their joint enterprise and for which he may have a right of contribution, and compensation to her for loss of use of the property subsequent to such termination.

From what has been said it is apparent that the findings of fact, conclusions of law and judgment are correct and amply supported by the evidence and the law and should be affirmed, except those portions thereof which declare that the parties' joint enterprise commenced in May, 1948, and that plaintiff has had ''an undivided one-third interest in and to that certain 1938 Auto-Car Tractor and that certain 1941 Freuhauf Van Trailer,'' and awards plaintiff judgment against defendant in the sum of $1,000, which excepted portions only are erroneous and should be reversed. It is, therefore, ordered that the judgment be reversed, with directions that the trial court revise

the findings of fact and conclusions of law, take such further steps and proceedings in the action as may be meet and proper, and render judgment, all in accordance with the views herein expressed. Each party will bear his or her own costs of this appeal.

Peters, P. J., and Bray, J., concurred.