[Civ. No. 66651. Second Dist., Div. One. Aug. 15, 1983.]

JANINA TAYLOR, Plaintiff and Appellant, v.
JOSEPH JOHN POLACKWICH, Defendant and Appellant.

COUNSEL

' Gottlieb, Gottlieb & Stein and Adrienne Stein for Plaintiff and Appellant.

James E. Sutherland for Defendant and Appellant.

## Opinion

**LILLIE, Acting P. J.**—Janina Taylor sued Joseph Polackwich to establish a one-half interest in property which they acquired while living together. Both parties appeal from the judgment.

Plaintiff and defendant met in 1971. Defendant was divorced. Plaintiff was separated from her husband and subsequently obtained a dissolution of the marriage. In 1972 defendant gave up his apartment and moved in with plaintiff, the six minor children of her marriage and her sister's minor child who were living in a rented house on Lime Avenue. Plaintiff was employed as a part-time cafeteria helper and later as a full-time cook. From October 1970 to June 1979 she received aid to families with dependent children payments. Defendant was employed and earned a substantial salary; he did not contribute to payment of the rent or utilities but paid for some of the food. Because of disputes with the landlord, defendant asked plaintiff to look for a house which he could buy as a home for them. Plaintiff found a house with three bedrooms and one and three-fourths baths on Olive Avenue; defendant decided to buy it. The purchase price was $27,950 with a down payment of $6,000 and monthly payments of $184. Defendant took title to the house in his name as his separate property. He made the down payment with funds in his savings account; the monthly payments were automatically deducted from his checking account. Defendant, plaintiff and the seven children moved into the house in September 1973. At that time defendant asked plaintiff how much rent she had paid for the Lime Avenue house; she replied, $205 a month, plus electricity, gas and telephone. Defendant told her that the same arrangement would prevail in the Olive Avenue house as long as they lived there together; he was attempting to maintain a landlord-tenant relationship with plaintiff because he wanted everything that was his to remain his. Plaintiff deposited $205 each month in defendant's checking account. At plaintiff's request defendant gave her a rent receipt each month for the first year and a half in order that she could prove to the welfare department that she was paying rent; it was plaintiff's understanding that she would not qualify for welfare if she owned an interest in real property.

Defendant purchased furniture for the house. In 1972 he purchased a motor home and thereafter made all of the payments on it. Defendant also bought a 1978 automobile for himself and made a gift to plaintiff of a 1973 automobile which he had purchased in his name. He paid the real property taxes and the insurance on the Olive Avenue house. While the parties lived there he bought food for the household, spending $600 or $700 per month for that item. Defendant had a checking account and a savings account in his name; he gave plaintiff a power of attorney to withdraw money from

both accounts. In 1974 defendant executed a will leaving all of his property to plaintiff and the children. He named plaintiff as the beneficiary of his life insurance, his employee's savings plan and his employee's profit-sharing plan.

Plaintiff testified: It was the parties' understanding that defendant purchased the house for "all of us"; plaintiff and defendant agreed that he would make the down payment and she would make the monthly payments; plaintiff was not concerned that her name did not appear on the title because defendant told her that he would take care of her and the children, and that was good enough for her; while the parties lived together they agreed to treat all of their property and earnings as joint property; plaintiff trusted defendant and relied on him to carry out that agreement; in addition to her employment outside the home plaintiff cooked, washed, shopped for groceries and took care of defendant when he was sick; she occasionally entertained defendant's coworkers and helped him with a correspondence course to further him in his employment; while the parties lived together in the Olive Avenue house plaintiff used her salary to make house payments, to pay bills and to buy groceries; sometimes she deposited a portion of her salary in a savings account in her name which she opened in 1974; the bulk of her earnings was used for household expenses, but most of those were attributable to her and the children; before the parties began living together, plaintiff basically had nothing other than clothes and "shreds of furniture"; her living conditions improved substantially as a result of her relationship with defendant.

Defendant testified: The parties did not agree to pool their earnings or to share expenses; plaintiff "spent all the money she wanted without a questions asked" and defendant "footed the bill"; he did not know how much money plaintiff earned or how much she received in welfare payments; when he bought the Olive Avenue house he told plaintiff that he took title in his name because the house was his and he wanted to control it as long as he lived; after he died she could have it; plaintiff did not ask that title to the house be put in both their names, nor did she ever declare that she owned half the house; the understanding was that while the parties were together plaintiff and the children could live in the house but if their relationship terminated defendant would "withdraw" all the rights he had given her; defendant did not agree to share with plaintiff ownership of the house or any property he acquired while they lived together; none of such property was in the names of both parties; defendant told plaintiff that he probably would marry her when he was ready, but that time never came.

Plaintiff's father testified: Defendant said that if something happened to him plaintiff and the children would be taken care of, i.e., plaintiff would

get his property if he died while they were living together; defendant did not say he would take care of plaintiff if the parties separated.

In July or August 1979 the parties had an argument and defendant told plaintiff that she and the children had to get out of the house.

When the parties separated defendant was employed, earning $19,625 per year; he also received annual pension of $4,852 from the Navy. At the time of trial plaintiff was 40 years old and was earning $9,000 per year as a cook for the Long Beach Unified School District. Plaintiff is a high school graduate and has completed 16 units of college work. While the parties lived together plaintiff wanted to resume her education, but defendant objected. If plaintiff earned an A.B. degree in the field of nutrition she would be eligible for employment as a dietetic assistant at a salary of $16,000 per year. There are cooking jobs in private industry which pay more than plaintiff presently earns, but she would have to attend cooking school to qualify for such a position. At the time of trial four of plaintiff's children and the child of her sister were minors and lived with plaintiff in the Olive Avenue house.[1] After the parties ceased living together plaintiff's former husband paid $9.80 per week as child support. Other than her salary and the child support payments, plaintiff's only income is $75 which she receives biweekly from the earnings of her 16-year-old son who still lives at home. Plaintiff has tried without success to rent a suitable house or apartment for her and the children.

Plaintiff sought a one-half interest in the Olive Avenue house, the furniture and other property on the theory of an oral agreement of the parties to treat such assets as their joint property, and on the theory of constructive trust. In the first phase of the trial the court determined as a matter of law that the evidence did not establish an express contract; on the special issues submitted to it the jury found that there was no implied contract between the parties that the property acquired while they lived together was their joint property. Following the second phase of the trial the court issued an intended decision rejecting plaintiff's claim of an equitable interest in any property held by defendant. However, the court also determined that "equity requires some further assistance to plaintiff from defendant in order that plaintiff can rehabilitate herself." Findings of fact and conclusions of law were not requested. Judgment was entered granting plaintiff the exclusive right to reside with her children in the house until July 1, 1984, provided that plaintiff pay defendant rent of $236 per month from July 1, 1980 to June 30, 1984, and pay as additional rent any increase in real property

---

[1] The court issued a preliminary injunction giving plaintiff the exclusive use and possession of the house during the pendency of the action.

taxes or insurance on the house; granting defendant the right to sell or refinance the house subject to plaintiff's right to reside therein; awarding to plaintiff "as her sole and separate property" all of the furniture, furnishings and appliances in the house; and ordering defendant to pay to plaintiff $1,000 as moving costs upon her vacation of the premises.[2] ■ ■ ■ ■ Defendant appeals from the judgment; plaintiff cross-appeals.[3]

## DEFENDANT'S APPEAL

■ ■ ■ ■ ■ Defendant contends that the rehabilitative award cannot stand because it is without legal or equitable basis.[4] We agree.

■ The trial court's reasons for making that award appear in the following excerpt from its intended decision: "[P]ursuant to the mandate contained in footnote 25, page 684 of *Marvin* v. *Marvin,* 18 Cal.3d 660, this Court is of the opinion that equity requires some further assistance to plaintiff from defendant in order that plaintiff can rehabilitate herself. The Court is mindful of the fact that defendant enjoyed the pleasures and privileges of living with plaintiff during some of the best years of plaintiff's life; years that are irretrievably gone. Further, it would be unrealistic to fail to recognize, incident to plaintiff's rehabilitation, that her primary responsibility is to her five minor children. . . ."

In *Marvin* v. *Marvin* (1976) 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106], our Supreme Court indicated that property rights of the parties to a nonmarital relationship may be enforced under theories of implied contract, constructive trust, resulting trust or quantum meruit. The court added in

---

[2]In its intended decision the court ordered that defendant pay directly to any trade school for cooks/chefs that plaintiff may choose to attend all costs of tuition until July 1, 1983, not to exceed $3,500. Such provision does not appear in the judgment. Plaintiff moved for an order amending the judgment to include defendant's obligation to pay tuition mentioned in the intended decision. The record on appeal does not indicate that the motion was granted and the judgment so amended.

[3]Ordinarily, if the judgment is in favor of a party he is not aggrieved and cannot appeal. (Code Civ. Proc., § 902; *Ruben* v. *City of Los Angeles* (1959) 51 Cal.2d 857, 864 [337 P.2d 825]; *Maxwell Hardware Co.* v. *Foster* (1929) 207 Cal. 167, 170 [277 P. 327].) As an exception to this rule, a party who is awarded less than he has demanded may appeal from the unfavorable portion of the judgment. (*Maxwell Hardware Co.* v. *Foster, supra,* 207 Cal. at p. 170; *Danielson* v. *Stokes* (1963) 214 Cal.App.2d 234, 237 [29 Cal.Rptr. 489].)

[4]Defendant also argues that the award is invalid because it was not within the issues framed by the pleadings. It is true that the complaint did not ask for rehabilitative support of any type. However, the fact that certain issues were not pleaded does not preclude their adjudication, and review on appeal, where (as in the present case) the action was tried on its merits, the issues were thoroughly explored during the trial, and the theory of the trial was known to the court and to counsel. (*Frank Pisano & Associates* v. *Taggart* (1972) 29 Cal.App.3d 1, 16 [105 Cal.Rptr. 414].)

footnote 25: "Our opinion does not preclude the evolution of additional equitable remedies to protect the expectations of the parties to a nonmarital relationship in cases in which existing remedies prove inadequate; the suitability of such remedies may be be determined in later cases in light of the factual setting in which they arise." (*Marvin, supra,* 18 Cal.3d at p. 684.) In discussing that footnote the Court of Appeal in *Marvin* v. *Marvin* (1981) 122 Cal.App.3d 871 [176 Cal.Rptr. 555] (hg. den.) observed that a rehabilitative award is not supported merely by a showing of the plaintiff's need therefor and the defendant's ability to meet that need. Said the court: "The award, being nonconsensual in nature, must be supported by some recognized underlying obligation in law or in equity. A court of equity admittedly has broad powers, but it may not create totally new substantive rights under the guise of doing equity. [Citations.]" (*Marvin* v. *Marvin, supra,* 122 Cal.App.3d at p. 876.) Thus, while a rehabilitative award is a proper means of enforcing rights which cannot otherwise be adequately enforced, an equitable remedy may not be employed to grant rehabilitation to one who has no underlying right to relief on any theory.

In the present case the jury found that there was no implied contract between the parties that property they acquired while living together was their joint property. The trial court determined that plaintiff had no equitable interest in any property held by defendant. Accordingly, plaintiff is without either a legal right or an equitable right to any property accumulated by the parties while they lived together. The complaint did not allege, nor did the evidence show, that defendant agreed to provide plaintiff with financial support in the event the parties ceased living together. It may be conceded that plaintiff's children, as well as the child of her sister, lived with the parties throughout their relationship. It also appears that plaintiff needed assistance from defendant after their separation in order to maintain for herself and the children the lifestyle which they enjoyed while living with defendant. These considerations, however, do not authorize the rehabilitative award which grants to plaintiff and the children the exclusive right to occupy defendant's house for four years, gives defendant's furniture to plaintiff, and orders defendant to contribute to the payment of plaintiff's moving costs when she eventually vacates the premises—all without any underlying legal or equitable obligation on defendant's part to provide plaintiff and her children with a place to live, or to furnish them with support in any form. Remedies may be fashioned only to enforce rights, not to meet the needs of one party or to achieve what the court perceives to be "equity" in a given situation.

### PLAINTIFF'S CROSS-APPEAL

Plaintiff contends that the trial court erred in refusing to award her an interest in the house on the theory of constructive trust.

A constructive trust is a remedial device created primarily to prevent unjust enrichment; equity compels the restoration to another of property to which the holder thereof is not justly entitled. (*Kraus* v. *Willow Park Public Golf Course* (1977) 73 Cal.App.3d 354, 373 [140 Cal.Rptr. 744].) The principal constructive trust situations are set forth in two statutes. Civil Code section 2223 provides: "One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." Civil Code section 2224 provides: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." Thus, a constructive trust may be imposed in practically any case where there is a wrongful acquisition or detention of property to which another is entitled. (*Weiss* v. *Marcus* (1975) 51 Cal.App.3d 590, 600 [124 Cal.Rptr. 297].) One who claims the ownership of property of which the legal title is in the name of another, and asserts that the property is held by such person in trust for the claimant, must establish the claim by clear, satisfactory and convincing evidence. (*Harris* v. *Harris* (1902) 136 Cal. 379, 384 [69 P. 23]; *Palmer* v. *Burnham* (1946) 72 Cal.App.2d 626, 627-628 [52 P. 664, 1080].) "Whether the evidence to prove the existence of the trust is clear, satisfactory and convincing 'is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal.' [Citations.] Likewise, in such cases the credibility and weight of the evidence are exclusively for the trial court." (*Viner* v. *Untrecht* (1945) 26 Cal.2d 261, 267 [158 P.2d 3]. See also *Edwards* v. *Edwards* (1949) 90 Cal.App.2d 33, 40 [202 P.2d 589].)

In the present case there were no findings of fact, none having been requested. Accordingly, we must presume in favor of the judgment that the trial court found every fact necessary to support it warranted by the evidence. (*Homestead Supplies, Inc.* v. *Executive Life Ins. Co.* (1978) 81 Cal.App.3d 978, 984 [147 Cal.Rptr. 22]; *California Teachers Assn.* v. *Pasadena Unified Sch. Dist.* (1978) 79 Cal.App.3d 556, 558 [145 Cal.Rptr. 100].) The evidence supports findings that the parties agreed that the house belonged to defendant during his lifetime and plaintiff acquired no interest in it; they further agreed that plaintiff would pay defendant rent of $205 per month while she and the children lived with him in the house; in accord with that agreement plaintiff, in depositing $205 each month in defendant's checking account, was not making payments on the house but was paying rent; the parties also agreed that plaintiff and the children could live in the house pursuant to such arrangement only so long as plaintiff and defendant maintained their relationship; defendant contributed to the support of plaintiff and the children, enabling them to enjoy a standard of living su-

perior to that which they had experienced before residing with defendant in the house; such contributions by defendant were equal to, if not greater than, the contributions to the household made by plaintiff in the form of services and money. Such findings support the judgment insofar as it fails to impress a constructive trust on the house in favor of plaintiff.

## DISPOSITION

The judgment is affirmed insofar as it denies to plaintiff an ownership interest in the house. In all other respects the judgment is reversed. Defendant shall recover his costs on appeal.

Dalsimer, J., and Riley, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.