[No. B009873. Second Dist., Div. Three. Mar. 11, 1986.]

FLOSSIE TAYLOR, Plaintiff and Appellant, v.
JEAN B. FIELDS, Defendant and Respondent.

**COUNSEL**

Marvin M. Mitchelson, Sat Karam Kaur Khalsa and Phillip I. Bronson for Plaintiff and Appellant.

Ervin, Cohen & Jessup and Horace N. Freedman for Defendant and Respondent.

**OPINION**

**KLEIN, P. J.**—Plaintiff and appellant Flossie Taylor (Taylor) appeals from the granting of a summary judgment in favor of defendant and respondent Jean B. Fields (Jean).

The papers in the summary judgment motion disclosed Leo D. Fields (Leo), a married man, and Taylor never lived together, and had a meretricious relationship. No existing case law supports a contract theory of recovery based on such a fact situation. Therefore, the summary judgment is affirmed.

### PROCEDURAL AND FACTUAL BACKGROUND[1]

Leo and Jean were married on April 20, 1930, in Alameda County, California. They lived together as husband and wife for more than 50 years, until Leo's death in September 1980.

---

[1]The facts are developed from the pleadings and papers filed in the summary judgment motion.

Taylor met Leo in 1938 in connection with a job application, and went to work for him. They became lovers, and began what turned out to be a 42-year relationship. During the first 20 years, Taylor was married to and lived with her husband, Jack, and they had two children.

After her divorce from Jack, Taylor continued her relationship with Leo, but never lived with him. Taylor alleged in 1969 or 1970 Leo asked her to marry him and she accepted. However, Leo did not end his marriage to Jean and instead, told Taylor that if she would continue their relationship, he would take care of her financially and see to it that she would live comfortably for the rest of her life. As part of this agreement, Taylor promised Leo that during the period of their relationship she would not marry anyone else.

Taylor also claimed Leo promised to provide for her by giving her $3,000 a month starting in 1973. She never received any such payments and instead, received only the sums of $200 or $500 occasionally. Leo allegedly gave Taylor approximately $10,000 worth of water bonds and deposited $20,000 in a joint checking account with Taylor.

In September 1981, after Leo's death, Taylor filed a complaint against Jean as the sole defendant for breach of contract arising out of the alleged intimate and "fiduciary" relationship of 42 years between herself and Leo.

The complaint alleged in three causes of action an oral contract, an implied contract, and breach of fiduciary duty and fraudulent transfer, and prayed for damages and a constructive trust. These causes of action were based on Leo's alleged promise to take care of Taylor financially, thus enabling her to live in comfort the rest of her life, in exchange for Taylor's continuing to be Leo's companion and confidante and devoting herself to his care, comfort and happiness.

Jean answered the complaint and discovery commenced.

On June 15, 1984, Jean filed a motion for summary judgment on the following grounds: no triable issues of material fact existed; the alleged contract was unlawful and against public policy; the action was barred by the statutes of frauds and limitations; and the complaint failed to name the trustee of the decedent's trust as an indispensable party. In support of this motion Jean filed a statement of undisputed facts.

Taylor filed an opposition motion and a statement of disputed facts, to which Jean filed a reply.

On August 27, 1984, the trial court heard and granted Jean's motion for summary judgment. In its minute order, the trial court stated the case did not come within *Marvin v. Marvin* (1976) 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106], and to apply *Marvin* to these facts would require a "quantum leap." The trial court also held the contract which contemplated, inter alia, Taylor would not remarry until and unless she could marry Leo, was void as being in restraint of marriage and therefore against public policy.

Taylor appealed.

## CONTENTIONS

Taylor contends the granting of the summary judgment was in error because there are triable issues of fact as to the existence of a valid oral and/or implied contract between Taylor and Leo.

Jean counters the summary judgment was proper because: the alleged contracts are illegal; Taylor's causes of action are barred by the statutes of frauds and limitations; and an indispensable party was not joined.

## SUMMARY STATEMENT

Taylor boldly asserts *Marvin* enables her causes of action based on her relationship with Leo. However, neither *Marvin* nor any other case to date has allowed recovery to an unmarried partner without a showing of a stable and significant relationship evolving out of cohabitation. A further requirement is a showing the agreement relied upon does not rest on illicit meretricious[2] consideration.

Here, admittedly Taylor and Leo never lived together, but were "intimate lovers." Taylor's deposition testimony clearly discloses sex formed an inseparable part of the consideration for any alleged agreement between them. Unfortunately for Taylor as the woman involved herein, her relationship with Leo· was nothing more than that of a legally married man and his mistress, albeit a long term one.

The existing law does not afford any relief to Taylor in her fact situation, and even though she challenges us to do so, this court does not intend to carve out a cause of action for her based thereon.

---

[2]Webster's New International Dictionary (2d ed. 1942) at page 1539, defines *meretricious* "1. Of, pert[aining] to, characteristic of, or being, a prostitute; having to do with harlots; . . ."

Black's Law Dictionary (4th ed. 1951) at page 1140, states "[o]f the nature of unlawful sexual connection."

## DISCUSSION

*1. Summary judgment rules.*

█ Summary judgment is properly granted only if no material fact exists or where the record establishes as a matter of law that a cause of action asserted against a party cannot prevail. (*Avila* v. *Standard Oil Co.* (1985) 167 Cal.App.3d 441, 446 [213 Cal.Rptr. 314].) █ The affidavits and declarations of the moving party are strictly construed while those of the opposition are liberally construed. (*Gray* v. *Reeves* (1977) 76 Cal.App.3d 567, 573 [142 Cal.Rptr. 716].)

█ The trial court must decide whether a triable issue of fact exists (*Axley* v. *Transamerica Title Ins. Co.* (1978) 88 Cal.App.3d 1, 8 [151 Cal.Rptr. 570]), and when the sole remaining question is one of law, it is the duty of the trial court to determine the issue of law. (*Coast-United Advertising, Inc.* v. *City of Long Beach* (1975) 51 Cal.App.3d 766, 769 [124 Cal.Rptr. 487].)

█ It is settled under Code of Civil Procedure section 437c summary judgment procedure that the trial court is not limited to a search for facts on a particular issue, but may draw inferences regarding that issue from the relevant facts set forth in the affidavits. (*C. L. Smith Co.* v. *Roger Ducharme, Inc.* (1977) 65 Cal.App.3d 735, 742 [135 Cal.Rptr. 483].) Hence, the trial court is to consider all inferences reasonably deducible from the evidence (*Maxwell* v. *Colburn* (1980) 105 Cal.App.3d 180, 185 [163 Cal.Rptr. 912]), and the lack of a triable issue of fact may be established by inference where the inference is the only reasonable one that can be drawn from the evidence for and against the motion. (*Hirsch* v. *Blish* (1977) 76 Cal.App.3d 163, 166 [142 Cal.Rptr. 646].)

█ A defendant " 'must conclusively negate a necessary element of the plaintiff's case or establish a complete defense and thereby demonstrate that under no hypothesis is there a material factual issue which requires the process of a trial.' [(*Saatzer* v. *Smith* (1981) 122 Cal.App.3d 512, 517 [176 Cal.Rptr. 68]).] The party opposing the summary judgment, which is supported by declarations or affidavits sufficient to sustain the motion, has the burden of showing that triable issues of fact do exist. (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 873 [127 Cal.Rptr. 110, 544 P.2d 1310].) If that burden is not sustained, summary judgment is proper. (*Saatzer* v. *Smith, supra,* 122 Cal.App.3d at p. 517.)" (*Los Angeles County-U.S.C. Medical Center* v. *Superior Court* (1984) 155 Cal.App.3d 454, 459 [202 Cal.Rptr. 222].)

■ Because the determination of the trial court is one of law based upon the papers submitted, the appellate court must make its own independent determination of their construction and effect. (*Larsen* v. *Johannes* (1970) 7 Cal.App.3d 491, 496 [86 Cal.Rptr. 744].) However, a motion for summary judgment is addressed to the sound discretion of the trial court, so that absent a clear showing of abuse, the judgment will not be disturbed on appeal. (*Leo F. Piazza Paving Co.* v. *Foundation Constructors, Inc.* (1981) 128 Cal.App.3d 583, 589 [177 Cal.Rptr. 268].)

■ In reviewing a summary judgment, an appellate court is not confined to the sufficiency of the stated reasons. Instead, the validity of the ruling is reviewable, irrespective of the reasons stated. (*Durbin* v. *Fletcher* (1985) 165 Cal.App.3d 334, 341 [211 Cal.Rptr. 483].)

These rules govern our review of this case.

2. *Marvin negates recovery here.*

■ Taylor contends her relationship is somehow sanctioned by the holding in *Marvin;* we find it is not.

In *Marvin,* Michelle brought an action against Lee with whom she had *lived for over six years* to enforce an alleged oral contract under which she was entitled to half the property acquired during that period in Lee's name, and to support payments. (*Marvin* v. *Marvin, supra,* 18 Cal.3d at p. 660.)

Michelle alleged the agreement provided: the two, while *living together,* would combine their efforts and earnings and share equally in any and all property accumulated as a result of their efforts, whether individual or combined; they would hold themselves out as husband and wife; Michelle would give up her career as an entertainer and singer in order to devote her full time to Lee as his companion, homemaker, housekeeper and cook; and Lee would provide for her financial support for the rest of her life. (*Id.,* at p. 666.)

Michelle further claimed she was forced to leave the household and Lee refused to pay any further support or to recognize she had any interest in the property accumulated together. She prayed for declaratory relief, asking the court to determine her interest and property rights, and also to impose a constructive trust on the property. (*Ibid.*)

The trial court granted Lee's motion for a judgment on the pleading. (*Id.,* at p. 667.)

The California Supreme Court in *Marvin* held "that adults who voluntarily *live together* and engage in sexual relations are nonetheless as competent as any other persons to contract respecting their earnings and property rights. Of course, they cannot lawfully contract to pay for the performance of sexual services, for such a contract is, in essence, an agreement for prostitution and unlawful for that reason. But they may agree to pool their earnings and to hold all property acquired during the relationship in accord with the law governing community property; conversely they may agree that each partner's earnings and the property acquired from those earnings remains the separate property of the earning partner. [Fn. omitted.] *So long as the agreement does not rest upon illicit meretricious consideration, the parties may order their economic affairs as they choose, and no policy precludes the courts from enforcing such agreements.*" (*Marvin* v. *Marvin, supra,* 18 Cal.3d at p. 674, italics added.)

As the *Marvin* court noted, even prior to its ruling, the enforcement of agreements between nonmarital partners living together had been upheld. (*Id.,* at pp. 667-670; see, e.g., *Trutalli* v. *Meraviglia* (1932) 215 Cal. 698 [12 P.2d 430]; *Bridges* v. *Bridges* (1954) 125 Cal.App.2d 359 [270 P.2d 69]; *Croslin* v. *Scott* (1957) 154 Cal.App.2d 767 [316 P.2d 755].)

However, in *Trutalli,* which was the first case to address this issue, the unmarried partners lived together for 11 years and raised 2 children. The court found they had the ability to contract with each other regarding title to real property, "so long as such immoral relation was not made a consideration of their agreement." (*Trutalli* v. *Meraviglia, supra,* at pp. 701-702.)

In *Bridges,* the parties also lived together, and the court held the agreement did not contemplate "meretricious relations" as part of the consideration. (*Bridges* v. *Bridges, supra,* at p. 363.)

*Croslin* also involved an unmarried couple who lived together for several years as husband and wife. Again, the court ruled "[t]he mere fact that parties agree to live together in meretricious relationship does not necessarily make an agreement for disposition of property between them invalid. It is only when the property agreement is made in connection with the other agreement, or the illicit relationship is made a consideration of the property agreement, that the latter becomes illegal." (*Croslin* v. *Scott, supra,* 154 Cal.App.2d at p. 771.)

Therefore, *Marvin* is not without the substantial precedent of prior cases, all of which upheld agreements where the parties lived together and relied on agreements not based on meretricious consideration.

*a. Attempted recovery based on judicially created and statutory causes of action partially successful.*

In *Butcher* v. *Superior Court* (1983) 139 Cal.App.3d 58, 71 [188 Cal.Rptr. 503, 40 A.L.R.4th 539], a case decided since *Marvin,* the court held a cohabitant may state a cause of action for loss of consortium for injury to her nonmarital partner, thus extending recovery rights beyond the enforcement of an agreement between cohabiting partners. In *Butcher,* the couple had lived together for 11½ years, had 2 children, filed joint tax returns and regarded each other as husband and wife. The court rejected the argument that a cause of action for loss of consortium should be limited to those named under the wrongful death and workers' compensation statutes, and held such rights should be accorded to nonmarital partners who engaged in "stable and significant" relationships. (*Id.,* at p. 70.)

In enunciating this standard, the *Butcher* court stated "[e]vidence of the stability and significance of the relationship could be demonstrated by the duration of the relationship; whether the parties have a mutual contract; the degree of economic cooperation and entanglement; exclusivity of sexual relations; whether there is a 'family' relationship with children." (*Ibid.*) The court also held the plaintiff must bear the burden of demonstrating both that the relationship is stable and has the characteristics of a de facto marriage. (*Ibid.*)

However, contrary to the *Butcher* holding, *Ledger* v. *Tippitt* (1985) 164 Cal.App.3d 625 [210 Cal.Rptr. 814], *Elden* v. *Sheldon* (Cal.App.) (hg. granted Apr. 25, 1985 (L.A. 32063)), and *Lewis* v. *Hughes Helicopter, Inc.* (Cal.App.) (hg. granted Feb. 20, 1986 (S.F. 24984)), refused to grant "live-ins" a cause of action for loss of consortium.

Several other cases have recognized the limitations of *Marvin* and have declined to equate a nonmarital relationship with marriage for recovery purposes, particularly where the attempted cause of action is based upon a statute, i.e., wrongful death—where recovery is limited to legal heirs as compared to a judicially created cause of action. (*Butcher* v. *Superior Court, supra,* 139 Cal.App.3d at p. 70; see, e.g., *Nieto* v. *City of Los Angeles* (1982) 138 Cal.App.3d 464 [188 Cal.Rptr. 31]; *Harrod* v. *Pacific Southwest Airlines* (1981) 118 Cal.App.3d 155 [173 Cal.Rptr. 68]; *Garcia* v. *Douglas Aircraft Co.* (1982) 133 Cal.App.3d 890 [184 Cal.Rptr. 390].)[3]

---

[3]We are aware that in Code of Civil Procedure section 377, subdivision (b)(2), the Legislature has allowed "putative spouses" to bring an action for wrongful death. It has been held the essence of a putative spouse is a good faith belief in the existence of a valid marriage even if the marriage *is* not solemnized. (*Wagner* v. *County of Imperial* (1983) 145 Cal.App.3d 980, 983 [193 Cal.Rptr. 820].) However, in *Marvin* "live-in" type situations, the cohabitants do not allege a belief in the existence of a valid marriage—rather, the parties have chosen not to marry.

On the other hand, while the decision has been questioned, the court in *Department of Industrial Relations* v. *Workers' Comp. Appeals Bd.* (1979) 94 Cal.App.3d 72 [156 Cal.Rptr. 183], held a nonmarital cohabiting partner was a "good faith" member of the deceased employee's household and dependent on the employee, and thus entitled to the employee's death benefits.

### b. *Cohabitation a prerequisite.*

In all these cases, whether successful or not, the plaintiffs at least alleged the parties *lived together.*

Here, to the contrary, the facts are vastly different. There is no evidence Taylor and Leo ever "lived together" or cohabited during their 42-year relationship. It was undisputed that Leo was married to Jean during the entire period of his relationship with Taylor, and there was no evidence Jean and Leo ever separated or lived apart. During the first 20 years of the relationship, Taylor admits being married to Jack and having two children.

While Taylor avers she and Leo occasionally spent weekends together and registered as husband and wife, such claims are inadequate to bring their relationship within *Marvin* principles. In *Marvin* and its progeny, the parties lived together in stable nonmarital relationships, and the alleged agreements were upheld so long as they were not based on meretricious consideration.

### c. *Spellens case unavailing.*

Despite existing law holding cohabitation to be a prerequisite to recovery for nonmarital partners, Taylor cites *Spellens* v. *Spellens* (1957) 49 Cal.2d 210 [317 P.2d 613], for the contention cohabitation is not a condition for relief under *Marvin.* However, the facts of *Spellens* are inapposite.

In *Spellens,* the unmarried defendant represented to plaintiff, who had obtained an interlocutory decree of divorce, that they could be legally married in Mexico. Defendant hired a Mexican attorney who gave the same advice. Thereafter, plaintiff and defendant were married in Mexico and lived together as husband and wife. (*Id.,* at p. 214.) Plaintiff wife then brought an action seeking, inter alia, an award of community property. (*Id.,* at p. 215.) The case was decided for plaintiff on the theory defendant was estopped to deny the validity of the Mexican marriage because of his fraud. (*Id.,* at pp. 219-222.)

d. *The alleged contract rests upon meretricious consideration.*

 Taylor contends even if part of her consideration is illegal, *Marvin* allows for enforcement of a contract of parties living together in a sexual relationship, if any portion of the contract is severable and supported by independent consideration. (*Marvin* v. *Marvin, supra,* 18 Cal.3d at p. 672.) But such a contract will be held invalid "if sexual acts form an inseparable part of the consideration for the agreement." (*Ibid.*)

In *Jones* v. *Daly* (1981) 122 Cal.App.3d 500 [176 Cal.Rptr. 130], a surviving partner to a "cohabiter's agreement" brought suit for declaratory relief against the estate of the decedent partner to enforce an oral agreement. The trial court dismissed the action after sustaining defendants' demurrer to the complaint without leave to amend. (*Id.,* at pp. 504-505.)

The complaint alleged plaintiff Jones and the decedent Daly, two men, had fallen in love and had decided to cohabit. Jones quit his job and moved into Daly's condominium. Jones alleged the parties agreed to share equally all property accumulated, with Daly's giving Jones a monthly allowance for his personal use. Jones agreed to " 'render his services as a lover, companion, homemaker, traveling companion, housekeeper and cook to Daly,' " abandoning a material portion of his potential career as a model and in return, Daly would furnish financial support to Jones for the rest of his life. (*Id.,* at p. 505.)

Defendants demurred, in part, on the basis the "cohabitor's agreement" was unenforceable because the complaint showed on its face that Jones' rendition of sexual service to Daly was an express and inseparable part of the consideration for the agreement. (*Id.,* at p. 506.)

Relying on *Marvin,* the *Jones* court affirmed the trial court's sustaining of the demurrer. In determining whether the "cohabitor's agreement" rested upon illicit meretricious consideration, the court observed that a " 'contract between nonmarital partners, even if expressly made in contemplation of a common living arrangement, is invalid only if sexual acts form an inseparable part of the consideration for the agreement. In sum, a court will not enforce a contract for the pooling of property and earnings if it is explicitly and inseparably based upon services as a paramour.' " (*Jones* v. *Daly, supra,* 122 Cal.App.3d at p. 507, citing *Marvin* v. *Marvin, supra,* 18 Cal.3d at p. 672.) However, even if sexual services are part of the contract's consideration, any severable portion of the contract supported by independent consideration will be enforced. (*Jones* v. *Daly, supra,* at pp. 508-509.)

The *Jones* court then applied this standard to the complaint and found there was no severable portion of the "cohabitor's agreement." The court reasoned neither the property sharing nor the support provision of the agreement rested upon Jones's acting as Daly's cook, housekeeper or traveling companion as distinguished from his lover. It held as a matter of law the allegations showed plaintiff's rendition of sexual services formed an inseparable part of the consideration for the agreement and therefore rendered it unenforceable in its entirety. (*Jones* v. *Daly, supra,* at p. 509.) ■ " 'If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void.' " (1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 340, pp. 287-288.)

■ In the instant complaint and in her deposition, Taylor alleges she acted as Leo's confidante, friend, travel companion and lover in return for his promises of lifetime financial care. Leaving aside the lack of a claim of cohabitation for the purposes of discussing this point, here, as in *Jones,* Taylor's rendering of sexual services for Leo is inseparable from the rest of the contract. Nothing in the alleged oral agreement rests upon Taylor's acting as a friend, traveling companion or confidante as distinguished from her role as Leo's paramour. Hence, the latter service forms an inseparable part of the consideration for the agreement and renders it unenforceable in its entirety.

Thus, as a matter of law, the alleged oral contract was unenforceable as based on illegal meretricious consideration.

e. *A constructive trust is not a proper remedy.*

■ Taylor's complaint claimed she was entitled to a remedial constructive trust as to all of Leo's community and separate property which he transferred to the trustee of an inter vivos trust in 1968. This theory fails for the same reasons as the contract causes of action.

■ A constructive trust is a remedial device created to prevent unjust enrichment, with equity compelling the restoration to another of property to which the holder thereof is not justly entitled. (*Taylor* v. *Polackwich* (1983) 145 Cal.App.3d 1014, 1022 [194 Cal.Rptr. 8]; Civ. Code, §§ 2223, 2224.) It may be imposed in practically any case where there has been a wrongful acquisition or detention of property to which another is entitled, but the party attempting to establish the constructive trust must establish the claim by clear and convincing evidence. (*Taylor* v. *Polackwich, supra,* 145 Cal.App.3d at p. 1022.)

■ Taylor's argument that her alleged contract with Leo was not illegal does not advance her claim. While she is correct in her contention *Marvin* recognized that principles of constructive trust may be applicable in some instances (*Marvin* v. *Marvin, supra,* 18 Cal.3d at p. 665), this is not such a case.

■ It is a basic principle of equity that one who seeks equity must have clean hands; therefore, a court will not aid the commission of fraud by enforcing a contract nor relieve one of the parties to a fraud from its consequences when both are in pari delicto. Moreover, any unconscionable conduct in the transaction may give rise to the defense. (7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 8, p. 5233.)

■ As discussed *ante,* Taylor's contract with Leo is unenforceable because there is no showing of stable and significant cohabitation and it is based upon illicit meretricious consideration. Here, both parties are in pari delicto in an adulterous relationship as Leo was married to someone else, and Taylor knew that fact. Because Taylor cannot obtain any relief under the illegal agreement at law, no constructive trust theory is available to her.

Further, Jean, as trustee, did not obtain Leo's community or separate property by fraud or in any other improper or wrongful manner. (Civ. Code, §§ 2223, 2224.) Jean's declarations indicate to the contrary; Leo and Jean both transferred their community property assets to a trust for estate planning reasons pursuant to advice of an attorney. Finally, there was no violation of a trust between Taylor and Jean because there was never any relationship, fiduciary or otherwise, between the two women.

Based on the above, the trial court did not err by not imposing a constructive trust.

CONCLUSION

Because Taylor and Leo, a married man, did not live together and their alleged agreement was grounded on meretricious consideration and was therefore illegal, the trial court did not err in granting the summary judgment.[4]

---

[4]Because of our holding, it is not necessary for this court to discuss other contentions of either party.

## DISPOSITION

The judgment is affirmed.

Lui, J., and Arabian, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 29, 1986. Mosk, J., was of the opinion that the petition should be granted.