[Civ. No. 17113.   Second Dist., Div. Three.   Jan. 17, 1950.]

MINNIE HILL, Respondent, v. ESTATE OF CHARLES
WESTBROOK, Deceased, et al., Appellants.

Hugh E. MacBeth and Hugh E. MacBeth, Jr., for Appellants.

Emmett E. Patten and Glen A. Duke for Respondent.

VALLÉE, J.—Appeal by Edward J. Westbrook, administrater of the estate of Charles Westbrook, deceased, from a judgment for plaintiff, and from an order denying his motion for a new trial. Since the latter order is nonappealable, the appeal therefrom is dismissed.

Plaintiff's complaint is founded upon a claim against the estate of Charles Westbrook, deceased, duly presented to, and rejected by, the administrator. A copy of the claim is made a part of the complaint. It reads as follows:

"For services rendered decedent from about August 15, 1930, to date of death, by Minnie Westbrook, consisting of keeping house for him during all of said time, living with him as man and wifé during all of said time, and during said time bearing decedent two children, namely . . . performing the

usual duties of a housewife during all of said time, and earning a salary from time to time during said period, all of which was turned over to said decedent................$10,000.'' The complaint alleged the death of decedent on July 31, 1946, the appointment of the administrater, the filing and rejection of the claim, the performance at decedent's request of the services set forth in the claim, services performed in the management of a rooming house, and the reasonable value thereof.

The answer denied generally all the allegations of the complaint. It also set up the statute of limitations, that plaintiff had been paid for all services rendered, and that the complaint did not state facts sufficient to constitute a cause of action against defendants.

Plaintiff first went to work for decedent in July or August, 1930. At that time decedent owned and operated a rooming house, consisting of 15 rooms, and a hamburger stand next door. Plaintiff's duties at that time consisted of cleaning the rooms, mopping floors, doing the laundry, making beds, handing out linen, cooking, and assisting decedent in the hamburger stand. The record does not disclose just when the meretricious relations between the parties commenced, but the relationship is conceded. As a result of the relationship two children were born. Thereafter plaintiff continued with the services she had been accustomed to performing. When the hamburger stand was subsequently converted into a liquor store she also assisted decedent in the store and waited on customers. There was testimony that the value of the services performed in the rooming house was $3.00 to $4.00 a day. In 1944, 1945 and 1946, plaintiff worked in a shirt factory in Monrovia, and there is testimony from which it may reasonably be inferred that she used her earnings for the benefit of decedent and made payments upon the home he had purchased in Monrovia. The evidence does not show the amount of her earnings in 1944. Her earnings in 1945 were $949.99, and in 1946 were $787.27.

The court found that plaintiff performed services for decedent between August 15, 1930, and July 31, 1946; that during decedent's lifetime he promised to reimburse plaintiff for her services at the time of his death and to make provision for her in his will; that he failed to do so; that the reasonable value of the services was $3,000. The services which the court found were performed were those mentioned in the claim and in the complaint, to wit, ''keeping house for him during

all of said time, cooking his meals from day to day, *living with him as man and wife during all of said time and bearing the said Charles Westbrook two children,* namely . . . managing and cooperating with the said Charles Westbrook in the management of the rooming house business and earned [earning] a salary from time to time during said period, all of which was turned over to the said Charles Westbrook or expended by the plaintiff in behalf of the said Charles Westbrook.'' (Italics added.) Judgment was rendered accordingly, from which this appeal was taken.

When a man and woman knowingly live together in a meretricious relationship—in the absence of an express agreement, oral or written, that she be compensated for services performed—there is no implied obligation on the part of the man to compensate the woman for household services rendered by her. (*Lazzarevich* v. *Lazzarevich,* 88 Cal.App.2d 708, 719 [200 P.2d 49], and cases cited therein; 35 Am.Jur. § 55, p. 219; 58 Am.Jur. § 29, p. 534; 71 C.J. § 40, p. 80; Anno.: 29 L.R.A.N.S. 787; L.R.A. 1917B 683; Ann.Cas. 1916B 114; *cf. Gjurich* v. *Fieg,* 164 Cal. 429 [129 P. 464, Ann.Cas. 1916B 111].) One reason for the rule is the illegality of the relationship where it enters into the alleged agreement. (71 C.J. § 40, p. 80.) Another reason is the presumption of gratuity arising from the family relationship of the parties, which family relationship repels the implication of a promise to pay that would otherwise arise from the performance and acceptance of valuable services. (71 C.J. § 40, p. 80; *cf. Gjurich* v. *Fieg,* 164 Cal. 429 [129 P. 464, Ann.Cas. 1916B 111].)

Although the parties live together in illicit relationship during the time the services are performed, an express contract to compensate for services performed as a housekeeper has been held valid and enforceable unless made in contemplation of such illicit relationship. (*Emmerson* v. *Botkin,* 26 Okla. 218 [109 P. 531, 138 Am.St.Rep. 953, 29 L.R.A.N.S. 786]; *Lytle* v. *Newell,* 24 Ky.L.Rep. 188 [68 S.W. 118]; *Rhodes* v. *Stone,* 17 N.Y.Supp. 561, 44 N.Y.St.Rep. 17.) Whether the contract was dependent upon the illicit relationship is a question of fact. (*Trutalli* v. *Meraviglia,* 215 Cal. 698 [12 P.2d 430]; *Lytle* v. *Newell,* 24 Ky.L.Rep. 188 [68 S.W. 118, 120].)

When a man and woman live together ''under an agreement to pool their earnings and share equally in their joint accumulations, equity will protect the interests of each in such property. (*Bacon* v. *Bacon,* 21 Cal.App.2d 540 [69

P.2d 884]; *Mitchell* v. *Fish*, 97 Ark. 444 [134 P. 940, 36 L.R.A. N.S. 838]; see *Feig* v. *Bank of America etc. Assn., supra* [5 Cal.2d 266 (54 P.2d 3)]; *Bracken* v. *Bracken,* 52 S.D. 252, 256 [217 N.W. 192]; *Hayworth* v. *Williams,* 102 Tex. 308 [116 S.W. 43, 132 Am.St.Rep. 879].) Even in the absence of an express agreement to that effect, the woman would be entitled to share in the property jointly accumulated, in the proportion that her funds contributed toward its acquisition. (*Hayworth* v. *Williams, supra; Delamour* v. *Roger,* 7 La.Ann. 152.)'' (*Vallera* v. *Vallera,* 21 Cal.2d 681, 685 [134 P.2d 761].)

There is sufficient evidence to support the finding that there was an express agreement on the part of decedent to compensate plaintiff for the services performed by her in maintenance of the household, in the rooming house, the hamburger stand, and the liquor store, at the termination thereof, to wit, at decedent's death. The indisputable fact remains, nevertheless, that (1) the action is predicated upon a claim which seeks, among other things, the reasonable value of living with decedent in meretricious relationship and bearing him two children; (2) the complaint likewise includes these alleged services among the services for which plaintiff seeks recovery; and (3) the findings, upon which the judgment rests, include compensation for these same alleged services. The law does not award compensation for living with a man as a concubine and bearing him children. ''Ex turpi contractu actio non oritur.'' ''Aid will never be given by any court to a person who bases his cause of action or claim upon illegal or immoral acts or conduct.'' (*Ballerino* v. *Ballerino,* 147 Cal. 544, 545 [82 P. 199].) The findings do not specify the reasonable value of the different items of services found to have been performed. The court merely found that all of the services alleged to have been performed, including living together and bearing children, were of the reasonable value of $3,000. In this state of the record it is impossible for us to say what part of the $3,000 was awarded for the alleged services for which recovery cannot be had. As the judgment is, at least in part, for the value of the claimed services for which recovery cannot be had, it must be reversed.

The findings are also materially defective in that there is lumped in the ''services'' performed the item ''earned [earning] a salary from time to time during said period, all of which was turned over to the said Charles Westbrook

or expended by the plaintiff in behalf of the said Charles Westbrook." Obviously this is not a "service" performed for which recovery can be had on that theory. There is no finding as to the amount of the salary earned by plaintiff and turned over to the deceased or expended in his behalf. Plaintiff's recovery, if any, depends upon proof of the actual amount contributed by her. This item should have been found separately from those included in services performed by plaintiff; and the exact amount contributed by her, in accordance with the proof, should have been found.

The action, insofar as it seeks recovery for services performed, in maintaining the household, in the rooming house, the hamburger stand, and the liquor store, and insofar as it seeks recovery of moneys contributed, is not barred by the statute of limitations. In *Lazzarevich* v. *Lazzarevich*, 88 Cal.App.2d 708, we stated, page 720 [200 P.2d 49] : "Where services are rendered over a period of time under an express or implied agreement that they shall be paid for at the termination thereof, the statute of limitations begins to run from the time the last service is rendered." In Lazzarevich we also held that where reimbursement for moneys contributed is to be made at date of death, the cause of action does not accrue until the date of death. There was evidence from which the court could have found that there was an express agreement, untainted by the illicit relationship, that these services were to be paid for at the termination thereof, and that plaintiff at decedent's death was to be reimbursed for moneys contributed.

The action should have been dismissed as to the estate of Charles Westbrook. An estate is not a person or entity and cannot be sued. (*Estate of Glass*, 164 Cal. 765 [130 P. 868].) The judgment, if for plaintiff, should provide that it be paid by the administrator in due course of administration of the estate of Charles Westbrook. (Prob. Code, § 730.)

Reversed.

Shinn, P. J., and Wood, J., concurred.