[Civ. No. 14144.   First Dist., Div. Two.   Mar. 29, 1950.]

LENA BANCHERO, Respondent, v. TOM COFFIS, as Administrator, etc., Appellant.

Morris Oppenheim for Appellant.

Jack G. McBride and Joseph F. Murphy for Respondent.

GOODELL, J.—Respondent filed a creditor's claim for $64,000 against decedent's estate and on its rejection commenced this action. The jury brought in a verdict for $7,500. Appellant moved for a judgment notwithstanding the verdict and on its denial judgment on the verdict was entered and this appeal taken.

The first count of the verified complaint alleged an oral contract made in 1941 whereby in consideration of plaintiff's promise to marry decedent, and of services rendered and to be rendered by her to him, he agreed that instead of paying her in cash for her services at current wages he would leave her all his property in compensation for her services; that she accepted the offer of marriage and agreed to perform certain services consisting of housekeeping, nursing care and attention, assisting in the management and operation of decedent's bakery business, and assisting in keeping books and accounts of his business interests; that she performed such services from February 15, 1941, until decedent's death in April, 1947, and that they were of the reasonable value of $64,000.

In the second count plaintiff alleged that decedent became indebted to her ''for services rendered,'' of the reasonable value of $64,000.

To each count appellant entered a general denial and pleaded the two-year statute of limitations.

Under Civil Code, section 1624, subdivision 6, and Code of Civil Procedure, section 1973, subdivision 6, an oral contract such as that alleged is invalid. Such invalidity was pleaded by the denials contained in the answer (*Healy* v. *Obear,* 29 Cal. App. 696, 698 [157 P. 569, 570]). Since no contract in writing was pleaded or proved, the first cause of action went out of the case, and plaintiff had to rely on her second count based on a *quantum meruit* (*Long* v. *Rumsey,* 12 Cal.2d 334, 341 [84 P.2d 146]).

The common count ''for services rendered'' supplied no detailed information whatever. It incorporated, however, the creditor's claim containing the general statement contained in the first count, that plaintiff had rendered four different kinds of services, but stated nothing further respecting them.

When the administrator answered he demanded a bill of particulars. None was supplied, and his motion to exclude evidence, made under section 454, Code of Civil Procedure, was denied.

Thus the defendant had to go to trial with no information whatever respecting the $64,000 demand save the general state-

ment contained in the creditor's claim that it was for services rendered in (1) housekeeping; (2) nursing care and attention; (3) assistance in the management and operation of a bakery, and (4) keeping books and accounts of decedent's business interests.

In their opening statement plaintiff's counsel told the court and jury in plain language that his client's services to decedent included "living with him, for a period of about five years, occupying the same apartment." Later it was stipulated that they lived together from November, 1941, until decedent's death on April 27, 1947. They were never married.

There was no attempt to prove the allegations of the first cause of action, namely, the making of an oral contract (in consideration of marriage or otherwise) to compensate for plaintiff's services. Plaintiff herself was not permitted to testify (Code Civ. Proc., § 1880, subd. 3).

With respect to "housekeeping" services, there was testimony given by two managers of the apartment house in San Francisco in which plaintiff and decedent lived as husband and wife, that plaintiff did the housekeeping in the apartment.

There was no evidence with respect to any "nursing care and attention."

With respect to "assistance in the management and operation of a bakery," one of plaintiff's witnesses, a woman who had worked with her, testified that at times plaintiff had worked overtime when the witness had not; that on many occasions at quitting time plaintiff had stayed on, and had worked, also, on Sundays and holidays. She was not asked respecting the extent of such overtime and presumably she had no idea whatever as to what it amounted to in hours or days. On occasions she, too, had worked overtime *but had never been paid for it*. On her cross-examination 86 cancelled payroll checks were introduced, payable to, and endorsed by, plaintiff, showing that from October, 1942, to the sale of the bakery in June, 1944, she was paid weekly the same as the other employees.

With respect to the claim for "keeping books and accounts for decedent's business interests" it appears that after the sale of the bakery decedent bought a tavern in San Francisco. There was testimony that plaintiff attended to the depositing of money and to some bookkeeping in connection with it, but there was no evidence as to the character of her work, the volume or extent of it, the period over which it spread, or its value. Decedent's nephew (a witness for plaintiff), who on

January 1, 1946, bought a half interest in the tavern from his uncle, testified that thereafter either he or the decedent, and not the plaintiff, made the deposits, and that for six months before he became a partner he had worked there, during which time he attended to the deposits and cashed checks "although she did do some of that also." This witness had never seen plaintiff in the tavern with decedent.

The wife of the former owner of the tavern testified that on mornings about 6:30, while on her way to work, she would see plaintiff going into the tavern with the books, and on other occasions about closing time she would see her outside the tavern in her car apparently waiting for it to close. She testified, further, that decedent had told her that plaintiff did a lot of bookkeeping work for him in the tavern, but she did not know this of her own knowledge. This witness' husband when he owned the place had had a bookkeeper but she could not say whether he had been kept on by decedent.

In the absence of a witness it was stipulated that one Sunday this absent witness, an auditor, had called at the apartment occupied by decedent and plaintiff and found them doing some work on books, also that plaintiff on some occasions would work on the books over at the place. The stipulation recites that "the exact nature of the work is unknown, length of time spent on the books unknown, and value unknown."

■ *The appellant contends that the denial of his motion to exclude evidence was an abuse of discretion.*

Section 454, Code of Civil Procedure, provides that "It is not necessary for a party to set forth in a pleading the items of an account therein alleged, but he must deliver to the adverse party, within ten days after a demand thereof in writing, a copy of the account, or be precluded from giving evidence thereof. The court or judge thereof may order a further account when the one delivered is too general, or is defective in any particular. If the pleading is verified the account must be verified . . ."

Defendant demanded a bill of particulars of "specific items, dates and amounts upon which the complaint . . . and the claims mentioned therein are predicated." The demand was ignored and appellant at once served a notice of motion to exclude evidence under section 454. About a month later plaintiff delivered a paper entitled "Bill of Particulars." This paper did not pretend to supply any kind of itemization or description of plaintiff's $64,000 claim, or of any of its four component parts. The second count, based on the *quantum*

*meruit,* alleged that decedent became indebted to plaintiff "for services rendered," the reasonable value of which was $64,000, but the paper was no amplification, or explanation of that broad allegation. It was, instead, *a listing of supposed assets of decedent's estate, totalling $64,000,* with the explanation appended that "The above comprises the property of decedent, which he promised to leave to the plaintiff as compensation for the performance of services rendered by her to him." It amounted to a mere reassertion by plaintiff of her claim to the whole estate, the assets of which the administrator presumably already knew.

When this "bill of particulars" came in appellant served a second notice of motion to exclude evidence, which motion the court denied.

The situation thus presented was not the everyday case where the bill "delivered is too general, or is defective in any particular" and where it is common practice for the judge to order a further account. The paper delivered was no bill of particulars at all, and did not pretend to be. It amounted to a total and unqualified noncompliance with the demand. In such case the extreme penalty provided by the section, of precluding the giving of evidence to prove the claim, is applicable (*Graham* v. *Harmon,* 84 Cal. 181, 185 [23 P. 1097] ; *McCarthy* v. *Mt. Tecarte L. & W. Co.,* 110 Cal. 687 [43 P. 391] ; *Fisher* v. *Brotherton,* 82 Cal.App. 532, 540 [255 P. 854], and *McManus* v. *Larson,* 122 Cal.App. 716 [10 P.2d 523] ).

There are several cases in which bills of particulars have been supplied after the expiration of the statutory time where the demandant instead of acting promptly delayed until the time of trial and then moved to exclude evidence (e. g., McCarthy case, *supra*; *Ames* v. *Bell,* 5 Cal.App. 1, 4 [89 P. 619] ). The courts in the exercise of their discretion have uniformly denied such eleventh-hour motions and have been upheld in so doing. This, however, is not such a case since defendant's motion was made some six months before the trial, pursuant to the procedure approved in the McCarthy case, *supra.* The court's reason for denying the motion does not appear, but it certainly could not have been lack of diligence.

In the McCarthy case, *supra,* the court suggests "the reason which called the section [454] into existence" as follows: "In the simplification of pleadings it is designed to protect the adverse party from embarrassment upon the trial, by enabling

him to demand and obtain in advance a detailed statement of the items charged against him.''

The close relation, if not the *identity*, of a bill of particulars to the pleadings in an action is shown in several cases. In *Long Beach etc. Dist.* v. *Dodge*, 135 Cal. 401, 407 [67 P. 499], the court said: ''. . . while permitting pleadings to be condensed and simplified in respect to such matters, the code has provided against surprise, by requiring the plaintiff to furnish when demanded, in writing, a copy of the account, under the penalty of being precluded from giving evidence thereof . . .'' In the same case it is said in effect that to require a full and detailed statement in the pleading itself ''would lead to an unnecessary prolixity in pleading, which it was intended to avoid by giving a remedy under section 454 . . .'' In *Ames* v. *Bell, supra,* 5 Cal.App. 1, 4, the court says: ''The purpose of the above section [454] is *to give the adverse party reasonable notice of the items constituting the claim which he is required to meet, so that he may prepare for trial.* It is in the nature of an *amplification of the pleading* to which it relates, and is to be construed as a *part of it* for certain purposes. *It has the effect of restricting the evidence and limiting the recovery to the matters and things set forth therein,* provided proper objections are made, and the court's attention called to any material departure from it. When the court or judge orders a further account or bill of particulars, as the section provides may be done, the further or amended account is to be construed as an *amended pleading for certain purposes.*'' (Emphasis added.)

The error in denying defendant's motion is accentuated by the character of the evidence admitted in this case. In the first place, the demand was not only large in amount, but avowedly designed to take the whole estate. The defense was accorded no showing of the basis of the $64,000 demand *either* by the pleadings *or* by a bill of particulars. If, as said in *Ames* v. *Bell, supra,* one of the functions of such bill is to restrict the evidence and limit ''the recovery to the matters and things set forth therein,'' it is obvious that this case went to the jury with no such restriction or limitation. A proper bill would have at least shown how much was claimed for each one of the four services alleged. No such amount was shown for the bakery services, and, as this court said in *Fisher* v. *Brotherton, supra* (82 Cal.App. 540), ''As the record stands . . . all evidence touching the subject matter included in that demand was improperly admitted.'' The same may be said respecting

the claim for bookkeeping services. In the last-cited case this court had before it a situation where the plaintiff at first ignored a demand and later attempted to comply with it. In enforcing the section by disallowing a substantial part of plaintiff's claim we said: "There is, however, no uncertainty in the meaning of section 454 of the code that when the demand is not complied with within the prescribed time the party is thereby precluded from giving evidence on the subject matter of the account."

*McManus* v. *Larson, supra,* 122 Cal.App. 716, is another case where the extreme penalty was imposed. Plaintiff there ignored the demand, and when, after a warning by defense counsel, he persisted in ignoring it, the defense moved to exclude evidence and the court granted the motion. Plaintiff then, on the day when the motion was granted, belatedly served a purported bill of particulars and later moved under section 473 for relief from his default. The latter motion was denied. At the trial the court excluded plaintiff's evidence and entered judgment for defendant. The judgment was affirmed and both the order excluding evidence and the order denying relief were upheld.

There is no reason why the plain language of section 454 should not be enforced here, as it was in those cases and, every reason why it should.

We have confined the discussion largely to the claims for bakery and bookkeeping services for the reason that it is fairly clear that plaintiff could not have furnished a bill of particulars for "housekeeping" or for "nursing care and attention" without stating herself out of court (*Ballerino* v. *Ballerino,* 147 Cal. 544 [82 P. 199] ; *Gjurich* v. *Fieg,* 164 Cal. 429 [129 P. 464, Ann.Cas. 1916B 111] ; *Hill* v. *Westbrook's Estate,* 95 Cal.App.2d 599 [213 P.2d 727]). On that subject (meretricious relations) it should be remarked, incidentally, that the court properly instructed the jury.

The jury's award of $7,500, then, must have been addressed to bakery and bookkeeping services alone, respecting both of which the defense had no pretrial information as the law requires it should have. The evidence on those two parts of the claim went in without any restriction or limitation whatever on the recovery and under the plain terms of section 454 and the cases cited it should have been excluded.

There is a further consideration of some importance in view of the opening statement and the stipulation respecting

the meretricious relations. If there had been a specification by way of bill of particulars respecting the bakery and the bookkeeping services, showing just what was plaintiff's position with respect to their rendition—the times, conditions and circumstances thereof—the defense would have had an opportunity before trial of preparing to meet whatever claims the plaintiff made, dependent on the way she made them, by a showing that whatever services were so rendered were, *by reason of the admitted meretricious relationship*, intended to be gratuitous (see *Gjurich* v. *Fieg, supra,* 164 Cal. 429). In the recent case of *Hill* v. *Westbrook's Estate,* 95 Cal.App.2d 599 [213 P.2d 727], the difficulty was in determining what part, if any, of plaintiff's services might have been compensible. The judgment was reversed because the findings were too general and indefinite.

Without an exposition of plaintiff's position by a bill of particulars the estate in the case at bar could not adequately prepare its defense on this important phase of the case. Hence, in short, it was denied a fair trial.

Had the court granted defendant's motion to exclude evidence, a judgment for defendant would have inevitably followed (as it did in *McManus* v. *Larson, supra*). Accordingly, and to save circuity of action we are now directing the entry of such judgment. This result was to be foreseen by plaintiff at the time when she deliberately refused to comply with defendant's demand.

It is not necessary to discuss any of the other points raised by the appellant.

The judgment is reversed with the direction to the trial court to enter judgment in favor of the defendant for his costs. The appeal from the order denying defendant's motion for judgment notwithstanding the verdict is dismissed.

Nourse, P. J., and Dooling, J., concurred.