[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Martha Lovallo, and the defendant, Nunno Guerrera, cohabitated from July 1977 through May of 1990, living as a married couple, without ever entering into such legal status. When the relationship commenced, the plaintiff was 17 and defendant 30 years of age. [See Walk v. Walk, 191 Conn. 328, 332
(1983), wherein cohabitation is defined as "a dwelling together of a man and woman in the same place in the manner of husband and wife."]
The plaintiff was employed throughout the period of the relationship, in various jobs as a bartender. The defendant worked intermittently as a laborer. In addition to annual periods of seasonal unemployment, the defendant was unemployed for the period from 1980 through 1983. The defendant became disabled as a result of an assault in 1986 and has not worked since that date.
The parties lived in various apartments until the plaintiff, with her own funds, purchased a condominium in June of 1981. The condominium which is owned by the plaintiff served as their home until April 4, 1990, when the defendant moved out.
The parties originally undertook to share household responsibilities and expenses. The arrangement was altered as defendant's erratic work schedule and outside interests eroded his ability to share the expenses. Plaintiff commenced to undertake the financial obligations with only occasional contributions from the defendant. The assumption by plaintiff of the "lion share" of responsibility did not alter the fundamental agreement, which was that the parties would share their household expenses during their relationship and periodically reimburse any imbalance in contributions.
The defendant was seriously injured in a June, 1986 incident. He was left in a coma as a result of such altercation and hospitalized for a period of approximately two months. The traumatic brain injury suffered by defendant left him permanently disabled; but able to care for himself and live independently. He currently receives Social Security Disability Insurance benefits.
The plaintiff quit her job and constantly attended defendant during his hospitalization. She brought him home from the hospital and nursed him back to health.
The defendant, with the assistance and encouragement of the CT Page 2902 plaintiff, sued his protagonist in the June, 1986 assault and reached a settlement from which he received $120,000 in proceeds.
The defendant contributed $400 towards his household expenses from 1986 — 1990, and has not provided plaintiff with any of his settlement proceeds.
The plaintiff seeks compensation for the expenses she advanced on defendant's behalf throughout the relationship; and for the care and comfort she afforded defendant after his injuries.
Plaintiff left her employment for one month after the injury to devote her attention to defendant's care and comfort. Following defendant's discharge from the hospital, the plaintiff continued to pay all household expenses. In addition, plaintiff provided more personal care in addition to the household duties she performed for defendant throughout the relationship.
Defendant's financial contribution through the course of the relationship consisted of some reimbursements for long distance telephone calls and two $200 payments made during the spring of 1990. The defendant on occasion would assist in household chores.
The relationship between plaintiff and defendant ended upon the defendant's refusal to share his settlement proceeds with plaintiff. Plaintiff initiated this action in November, 1989 and in the spring of 1990 demanded room and board expenses from defendant. Defendant moved out of plaintiff's condominium in early May, 1990.
In Connecticut common law marriages are not accorded validity. Hames v. Hames, 163 Conn. 588, 593, 316 A.2d 379
(1972); State ex rel Felson v. Allen, 129 Conn. 427, 432,29 A.2d 306 (1942). Cohabitation alone does not create any contractual relationship or unlike marriage, impose other legal duties upon the parties, Boland v. Catalano, 202 Conn. 333, 339 (1987). The rights and obligations that attend a valid marriage simply do not arise where the parties choose to cohabit outside the marital relationship. McAnerney v. McAnerney, 165 Conn. 277, 285,334 A.2d 437 (1973).
The legal distinctions between cohabitation and marital status does not end the inquiry or resolve the plaintiff's contractual claims which arose during a relationship of cohabitation. Our Supreme Court has held in Boland v. Catalano,202 Conn. at 339-340:
 Ordinary contract principles are not suspended, however, for unmarried CT Page 2903 persons living together, whether or not they engage in sexual activity. Contracts expressly providing for the performance of sexual acts, of course, have been characterized as meretricious and held unenforceable as violative of public policy. E.G., Hill v. Estate of Westbrook, 95 Cal.App.2d 599, 602, 213 P.2d 727 (1950; Wallace v. Rappleye, 103 Ill. 229, 249 (1882); Gauthier v. Laing, 96 N.H. 80, 84-85, 70 A.2d 207 (1950). "[T]he nonenforceability of agreements expressly providing for meretricious conduct rested upon the fact that such conduct as the word suggests, pertained to and encompassed prostitution. To equate the nonmarital relationship of today to such a subject matter is to do violence to an accepted and wholly different practice." Marvin v. Marvin, 18 Cal.3d 660, 683, 557 P.2d 106, 134 Cal.Rptr. 815 (1976). In accordance with contemporary mores, our criminal statutes have been revised to decriminalize sexual activities between unmarried consenting adults not involving prostitution. General Statutes Sections 53a-65 through 53a-90. There is no longer, therefore, any basis for imposing civil sanctions for such behavior or for failing to recognize that contractual rights may develop in the course of a cohabitation that includes a sexual relationship just as they may arise between parties inhabiting the same household without any such relationship.
We agree with the view set forth in Marvin v. Marvin, supra, 665, that "[t]he courts should enforce express contracts between nonmarital partners except to the extent that the contract is explicitly founded on the consideration of meretricious sexual services. . . . In the absence of an express contract, the courts should inquire into the conduct of the parties to determine whether that conduct demonstrates an implied contract, agreement of partnership or joint venture, CT Page 2904 or some other tacit understanding between the parties. The courts may also employ the doctrine of quantum meruit, or equitable remedies such as constructive or resulting trusts, when warranted by the facts of the case."
The court finds that the parties' conduct demonstrates an understanding that the household expenditures would be shared by the parties, and that the defendant would reimburse plaintiff for his share when he was able to do so.
The plaintiff, in reliance on this agreement, supported the defendant and maintained a home for him until May, 4, 1990.
The defendant has breached that contractual agreement by failing and refusing to reimburse plaintiff for any portion of his household expenses for the period from August, 1986 to May 4, 1990 [with the exception of the $400 in payments to the plaintiff in 1990].
The statute of limitations of six years for actions on implied contract, Connecticut General Statutes Section 52-576, limits the plaintiff's claims to damages accruing since December, 1983.
The plaintiff, at trial, through testimony and documentary proof, established her household expenses from December, 1983 through May 4, 1990. The court calculates that during such 6-1/2 year period plaintiff expended on basic household expenses: mortgage, taxes, utilities, food and clothing for both parties, a total amount of $80,000. In that the condominium was and is owned by plaintiff, the defendant's share of such expenses should be adjusted to reflect his lack of equity in the property. The $80,000 figure is thus reduced by $21,000. The court further credits defendant for payments he made in 1984-86. The court credits the defendant with $8,000 for this period, leaving a balance due from the defendant of $21,500.
The plaintiff's second count is based on the theory of quantum meruit.
The court finds that plaintiff rendered nursing and other substantial support to the defendant out of a sense of love and obligation. These invaluable services to the defendant including care while he was hospitalized were of the nature of the expression of concern and affection resulting from their long standing intimate relationship.
Judgment enters for the plaintiff on Count One in the amount of $21,500. On Count Two, judgment enters for the defendant. CT Page 2905
No interest or costs are awarded to either party.
McWEENY, J.