[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Susan L. Wilson brought this action against the defendant Robert J. Overton on a claim of an agreement to pool resources, improve a piece of property, share a common residence, provide domestic services and financial support to one another, to labor jointly in a landscaping business and to deal fairly with each other concerning the use and division of their assets. CT Page 10538
The plaintiff's complaint is in five counts, breach of an implied oral contract, quantum meruit, unjust enrichment, partnership, and breach of an oral partnership agreement. Basically, the complaint is based upon a claim that the plaintiff is entitled to compensation by reason of her living with the defendant for twelve years and bearing two children.
In 1974, the defendant, Mr. Overton met the plaintiff Ms. Wilson. while attending high school and began a sexual relationship. They continued to live with their parents. After visiting log cabins owned by friends in Vermont, the parties began designing plans for a cabin. In May 1976 the defendant's father deeded to his 1.5 acres in the rear of his home. The defendant and a friend worked on the cabin daily with minimal help from the plaintiff.
On February 10, 1978, the home was nearly finished and the defendant and the plaintiff moved in together, bringing their personal possessions from their parents, homes and making this their residence and address for tax purposes, mail delivery, motor vehicle records, etcetera. Shortly thereafter friends and relatives gave them a housewarming party with gifts of money and items for their household. During the eleven years they occupied the home as a family, Mr. Overton worked at his father's landscaping business and as an electrician. Ms. Wilson earned income as a waitress, a nurse's aide, a kennel worker, and a bookkeeper for the defendant's father's business. The plaintiff and defendant pooled their incomes and applied them to mutual expenses.
The parties continued their sexual relationship, with neither using any birth control methods. Ms. Wilson gave birth to two children, Zebulah H. Overton, born August 3, 1981 and Lucas H. Overton born December 5, 1983. She ceased employment outside the home and became the principal caretaker for the children. Ms. Wilson performed traditional homemaker duties including meal planning, shopping, laundry, animal care, financial management and health care. In addition, she cared for all the needs of the children with occasional help from Mr. Overton.
Mr. Overton had decided to terminate the relationship when he found out that Mr. Wilson was pregnant. The plaintiff considered an abortion but was convinced otherwise by the defendant in order that the son Zebulah would not grow up as an only child. The relationship between the parties deteriorated so that in February, 1989 the plaintiff moved out of the cabin owned by the defendant. She moved into the defendant's father's home and later to an adjacent apartment.
Not only was there never a valid marriage between the parties, there was never any agreement to marry at any time during the twelve year relationship. Connecticut has rejected the theory of "common law marriages." McAnerney v. McAnerney, 165 Conn. 277, 285 (1973); Roland v. Catalano 202 Conn. 333, 339 (1987); Collier v. Milford, 206 Conn. 242248, (1988). In order for the plaintiff to prevail in this case, she CT Page 10539 must prove by a fair preponderance of the evidence that there was a contractual relationship between herself and the defendant.
The issues in the case are controlled by the decision of the Supreme Court in Boland v. Catalano, supra at page 333, At page 339, the court stated;
 We agree with the trial referee that cohabitation alone does not create any contractual relationship or, unlike, marriage, impose other legal duties upon the parties. In this jurisdiction, common law marriages are not accorded validity, Hames v. Hames, 163 Conn. 588, 593, 316 A.2d 379 (1972); State ex rel. Felson v. Allen, 129 Conn. 427, 432, 29 A.2d 306 (1942). The rights and obligations that attend a valid marriage simply do not arise where the parties choose to cohabit outside the marital relationship. McAnerney v. McAnerney, supra, 285. Ordinary contract principles are not suspended, however, for unmarried persons living together, whether or not they engage in sexual a activity. Contracts expressly providing for the performance of sexual acts, of course, have been characterized as meretricious and held unenforceable as violative of public policy. E.g., Hill v. Estate of Westbrook, 95 Cal.App.2d 599 602, 213 P.2d 727 (1950: Wallace v. Rappleye, 103 Ill. 229, 249
(1882); Gauthier v. Laing, 96 N.H. 80, 84-85, 70 A.2d 207 (1950). "[T]he nonenforceability of agreements expressly providing for meretricious conduct rested upon the fact that such conduct as the word suggests, pertained to and encompassed prostitution. To equate the nonmarital relationship of today to such a subject matter is to do violence to an accepted and wholly different practice." Marvin v. Marvin, 18 Cal.3d 660, 683, 557 P.2d 106, 134 Cal.Rptr. 815 (1976). In accordance with contemporary mores, our criminal statutes have been revised to decriminalize sexual activities between unmarried consenting adults not involving prostitution. General Statutes 53a-65 through 53a-90
There is no longer, therefore, any basis for imposing civil sanctions for such behavior or for failing to recognize that contractual rights may develop in the course of a cohabitation that includes a sexual relationship just as they may arise between parties inhabiting the same household without any such relationship.
 We agree with the view set forth in Marvin v. Marvin. supra, 665, that "[t]he courts should enforce express contracts between nonmarital partners except to the extent that the contract is explicitly founded on the consideration of meretricious sexual services . . . In the absence of an express contract, the courts should inquire into the conduct of the parties to determine whether that conduct demonstrates an implied contract, agreement of partnership or joint venture, or some other tacit understanding between the parties. The courts may also employ the doctrine of quantum meruit, or equitable remedies such as constructive CT Page 10540 or resulting trusts, when warranted by the facts of the case."
The primary issue is whether a contract was created by the parties by their actions. The plaintiff must rely on the theory of implied contract since there was no testimony of an express contract. The plaintiff admitted that she never asked the defendant to marry her nor did she request that the real estate in question be conveyed to her. Likewise, there was no express contract between the parties.
Testimony from the plaintiff and defendant established that the plaintiff brought little to the relationship by way of personal property of financial support. The plaintiff worked sporadically and she used any income that she developed for her own use. On the other hand, the defendant supported the plaintiff from approximately 1978 to 1989, including approximately three years prior to the birth of the first child.
The plaintiff and the defendant never married and therefore the plaintiff has no rights afforded a married spouse. Rather, the plaintiff seeks to obtain redress through an attempt to enforce a contractual right that doesn't exist. Under a contract theory, the plaintiff had to prove, first a violation of a contractual duty and secondly, a specific loss as a result of that breach.
In view of the fact that the plaintiff has not proved either an express or implied contract, the court finds the issues in favor of the defendant based upon, the authority of Boland v. Catalano, supra.
Judgment may enter accordingly with costs.
PICKETT, JUDGE