[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR CONTEMPT MOTION FOR MODIFICATION
The parties have requested a limited decision on two issues CT Page 450-F regarding the two pending motions for contempt and modification: Whether or not disability income payments being paid pursuant to an insurance policy can be considered income pursuant to the 1986 separation agreement of the parties and income in accordance with the Child Support Guidelines. This appears to be an issue of first impression. The court has bifurcated the hearings to first decide these two preliminary issues. I have heard testimony and considered legal arguments from the parties on these two issues. The parties have reserved the right to later hearings concerning other issues that are raised by the motion for contempt and/or motion for modification of child support.
FACTS
The parties' marriage was dissolved by order of the Superior Court on February 12, 1986. A separation agreement was incorporated by reference in the decree. The issues involve child support for the minor child whose eighteenth birthday is December 31, 1996.
The husband has been suffering from an illness which has prevented him from being able to be employed. He was not employed for at least one year prior to the February, 1986 separation agreement. Article 3.1 of the separation agreement reads as follows CT Page 450-G
 "The Wife shall have primary responsibility for the support of the child until such time as the Husband shall be `financially able,' as defined herein, to contribute to the child's support. The Husband shall be deemed `financially able' when his Net Subsistence Amount exceeds Fifteen Thousand (15,000) Dollars. Net Subsistence Amount shall be defined as income from any and all sources, both earned and unearned less income related cost and expenses such as withholding taxes, FICA taxes, transportation costs, overhead expenses and any other reasonable expenditure necessary to generate income."
The husband purchased a disability insurance policy from INA, an insurance company doing business in New York. The husband, a member of the New York bar, was able to purchase the policy by reason of his membership in the New York State Bar Association. The effective date of the policy was April 7, 1983. The "total disability weekly indemnity sickness benefits" pursuant to the policy are $800. Pursuant to the illness suffered by the defendant, an application was made and approved by INA in November of 1988. The husband has been receiving the $800 per week since December of 1988. The amount to the date of the court hearing received by the defendant from that policy has been no CT Page 450-H less than $326,400 over that almost eight year period of time.
INA's obligations under the policy covering the husband's illness are as follows. "The Company hereby insures the person named above in the Policy Schedule A (herein called the INA insured) against specified loss resulting: . . . (b) from sickness or disease contracted by the INA insured causing loss, commencing while applicable coverage in force (herein called `such sickness')." The clause in the insurance policy relating to the policy's effective term is as follows: "Upon payment of the Initial Term Premium, this policy takes effect for the period commencing on Effective Date and ending on the First Renewal Date set forth up above; provided, however, if the INA insured is not regularly performing the duties of his occupation upon such Effective Date, the insurance shall become effective upon the first day of the month following the date of return to his regular performance of his duties."
The policy in question utilizes the word "indemnity" or "indemnities" as opposed to loss of "income". An example is found in paragraph eight of the policy relating to time of payment of claims. "Periodic payment will be made of all indemnities payable under this policy which accrued during a period of more than four weeks. Indemnities payable under this policy for any loss other than loss for which this policy provides any periodic payment CT Page 450-I will be paid immediately upon receipt of due written proof of such loss." Also relevant to the considerations in this case, is the benefit clause of the policy which reads as follows: "In the event the Insured has received the maximum benefits payable under this policy for one disability, his coverage shall be automatically suspended and no further premium shall be due until he resumes the active practice of his profession or is engaged in the duties of his occupation."
The policy consists of eight pages. The husband is currently receiving total disability weekly indemnity for sickness. At page eight is contained the following: "If, while insured for this benefit `the insured becomes totally disabled' as defined herein, as a result of `such sickness' requiring treatment by a licensed physician other than the Insured, the Company will pay the applicable sickness Weekly Indemnity benefits, as specified in the Policy Schedule, during the continuation of such total disability, commencing with the first day after the applicable Waiting Period specified in the Policy Schedule, but not to exceed the applicable Maximum Payment Period-Sickness as defined herein." "`Total disability' and `totally disabled' as used herein means inability of the Insured to perform the substantial and material duties of the Insured's occupation during the Waiting Period and thereafter until benefits have been paid for the Maximum Payment-Sickness". CT Page 450-J
The first reference in the policy to the word "income" appears on the top of page six in an endorsement entitled "Disability Income Insurance required for Disclosure of Statement". "This policy; 1a. Pays Weekly Indemnity for total disability resulting from accident or sickness commencing with the thirty-first day of disability, b. Provides $800.00 Weekly Indemnity, which, if greater than $400, is reduced to $400 for disabilities commencing on or after the premium due date following the insured's attainment of age sixty." The mandatory rider at page seven contains a formula for the determination of a residual disability weekly benefit. The defendant is not receiving a residual disability weekly benefit. The formula is based upon the loss of weekly income divided by the prior weekly income, times the weekly benefit for total disability. That resulting number is the residual disability weekly benefit. The policy contains a definition on that page of weekly income "as meaning income earned for services which are done by the person, including from salary, wages, fees, or other forms of enumeration, after deduction of normal and customary business expenses but before deduction of any income taxes. It does not include dividends, rents, royalties, annuities, or other forms of honored income."
DISCUSSION OF LAW
CT Page 450-K
One of the two issues presented to this court is whether the disability insurance payment of $800 per week to the husband is considered "Net Subsistence Amount" as defined in Article 3.1 of the agreement. This requires an analysis of an insurance policy. An insurance policy is a contract subject to the normal contract interpretation rules, despite the fact that most policies are contracts of adhesion. Finley v. Aetna Life Casualty Co.,202 Conn. 190, 199 (1987).
 "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact; where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law."
 "It is the general rule that a contract is to be interpretated according to the intent expressed in its language and not by an intent that the court may believe existed in the minds of the parties. When the intention conveyed by the terms of an agreement is clear and unambiguous; there is no room for construction. A court cannot import into an agreement a different provision nor can the construction of the agreement be changed to vary the express limitations of its terms. It is not within CT Page 450-L the power of courts to create new and different agreements. In interpreting a contract courts cannot add new or different terms."
 "The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. The circumstances surrounding the making of the contact, the purposes which the parties sought to accomplish and their motives cannot prove an intent contrary to the plain meaning of the language used. It is axiomatic that a party is entitled to rely on its written contract as the final integration of its rights and duties. Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotations and citations eliminated)
 Levine v. Massey, 232 Conn. 272, 277-279 (1995).
The decree of February 1986 incorporated the separation agreement. The separation agreement survives the decree. The separation agreement is a contract and is determined by contract interpretation rules.
The wife testified that the child support provisions in CT Page 450-M Article 3.1 of the separation agreement intended to give the husband an opportunity to rehabilitate himself from this illness; to get well and to get a job. Despite that claim the separation agreement does not refer to the existence of a disability insurance policy. The financial affidavits filed in 1986 show no reference to a disability insurance policy. The wife testified that she did not remember that the disability insurance policy had been discussed or would be considered "income from any and all sources" as set forth in Article 3.1.
The husband claims the purpose of the agreement was to encourage him to get well, to get a job, to make money and then to be able to pay child support. The husband emphasizes that he did not intend that the disability insurance benefits would be included as income. He views the agreement as being beneficial to him from a therapeutic point of view and, therefore, he inserted the phrase "financially able".
The court notes that the husband is an attorney admitted to practice in the state of New York. For a while he had been engaged in legal work in the State of Connecticut. He was represented by a Connecticut attorney at the time of the preparation of the agreement. The agreement was mediated by a third party who also is a Connecticut attorney. The wife, although not a Connecticut attorney, was represented by a CT Page 450-N Connecticut attorney at the time of the agreement.
The court finds that the language of the agreement does not contain any reference to disability insurance. The mediator did consider, in the written annual budget, submitted during negotiation of the separation agreement, a disability insurance premium as part of the insurance expenses of the family. The budget showed $550 per year along with other expenses for life insurance, medical and dental insurance and similar costs. The husband's financial affidavit dated February 11, 1986 contained the following footnote "defendant has been incapitated by illness and unable to work for several years. In 1985, he was employed five weeks as a cabdriver at $116 per week gross and $100 per week net. Defendant has been employed from December 6, 1985 as an attorney at a weekly salary of $1153.85 gross and $656.48 net. This employment is being terminated by the employer of February 14, 1986. No immediate prospects of future employment are known." This financial affidavit indicated no income from any source other than that contained in this footnote.
As of the date of decree in February, 1986, there were no Child Support Guidelines in Connecticut. In 1994 a pilot guideline program was instituted in two other Judicial Districts. Child Support Guidelines are now mandatory by statute. C.G.S. §46b-215a. "The child support and arrearage guidelines . . . shall CT Page 450-O be considered in all determinations of child support amounts and payment on arrearages and past due support with the state."C.G.S. § 46b-215b. Guidelines are required to be updated each four years. The current Guidelines were effective on June 1, 1994. C.G.S. Section 46b-215a.
Under the Child Support Guidelines "Gross income means the average weekly income before deductions". C.G.S. § 46b-215a-1,Child Support and Arrearage Guidelines. There are twelve separate subparagraphs of "gross income" inclusions. The seventh paragraph is "(vii) Social Security (excluding Supplemental Security Income (SSI)), veterans, unemployment and workers' compensation, retirement, pension, and other benefits." Excluded from "gross income" is the following: "(ii) federal, state, and local public assistance grants".
The husband argues, that excluded from gross income for Child Support Guidelines purpose is SSI. SSI is Supplemental Social Security Income caused by a medical disability. Therefore, the husband argues that the $800 per week indemnity is the equivalent of SSI and should be excluded from gross income. The husband is not receiving SSI Disability Income.
The court takes judicial notice that recipients of SSI Disability Income with minor children are entitled to receive CT Page 450-P their own separate SSI benefits during their period of minority. There is no similar provision for separate payments to a minor child under the New York State Bar Association INA insurance policy. The only payment made pursuant to that policy is the $800 per week paid to the husband. The court notes that since February of 1986, there has been no modification of any order of payment. The only support order is the original February 12, 1986 decree. Mandatory Child Support Guideline under C.G.S. § 46b-215b are not retroactive. The Guidelines are "not applicable here because of all the evidence in this case was admitted prior to the effective date of the guidelines and because Judge Koletsky ruled on the basis of that evidence and, presumably, on the basis of the law as it existed as of the date of the hearings before Judge Noren." Nahas v. Nahas, 25 Conn. App. 595, 598 (1991). C.G.S. §46b-215b, effective October 1, 1989, created a rebuttable presumption that when the amount for child support is determined in accordance with the Child Support Guidelines, an order reflecting that amount is appropriate. Nahas involved January 1989 hearings with a decision rendered in October 1989. The Child Support Guidelines are not relevant for the interpretation of the 1986 separation agreement. They are relevant for the modification.
The provisions of the 1986 separation agreement have been incorporated by reference in the 1986 judgment. "It is necessary CT Page 450-Q to ascertain the intent of the parties as expressed in the language of the agreement rather than to construe the language of the decree itself." McDonnell v. McDonnell, 166 Conn. 146, 150
(1974). The interpretation of the separation agreement in a marital dissolution action is a search for the intent of the parties. Sweeny v. Sweeny, 9 Conn. App. 498, 501 (1987). The rules of Levine v. Massey concerning the interpretation contracts is appropriate for separation agreements. Sturtevant v.Sturtevant, 146 Conn. 644, 648 (1959); Gino's Pizza of EastHartford. Inc. v. Kaplan, 193 Conn. 135, 138 (1984); Sweeny v.Sweeny, supra 501.
CONCLUSION OF LAW
It appears that the issue of whether or not the funds from a disability insurance policy should be considered income, whether determined by a separation agreement or the mandatory Child Support Guidelines effective June 1, 1994 has not been decided in any reported decision in Connecticut.
There appears to be no family case discussing treatment of disability insurance benefits. Russo v. Russo, 1 Conn. App. 604,608 (1984) did discuss social security disability benefits in relationship to income for the purpose of awarding alimony and/or assigning property under C.G.S. §§ 46b-81 and 46b-82. "A social CT Page 450-R security disability benefit is a source of income designed to provide periodic sums from which the recipient can expend funds necessary for his own support or the support of his dependents."Russo v. Russo, supra 608.
Burke v. Burke, FA-92-0128075 S, August 2, 1996 (Kavanewsky, J.) held that an unemployed corporate officer's receipt of a lump sum severance payment was essentially the prepayment of a future income stream. The court held that these funds constitute income which the court could take into consideration in deciding a motion for modification of alimony. Judge Kavanewsky found support for that position in Parin v. Parin, 1995 Ct. Sup. 337, January 25, 1995 (Harrigan, J.); Gauthier v Gauthier,1995 Ct. Sup. 5532, May 12, 1995 (Petroni, J.); Dotti v. Dotti,1991 Ct. Sup. 7108, August 27, 1991 (Coppeto, J.).
Payment of a lump sum severance package under the theory of the above entitled cases was held to be "income" under the Child Support Guidelines. Ponger v. Ponger, 17 Conn. L. Rptr. No. 17, November 11, 1996 (Kavanewsky, J.). "The plaintiff's receipt of severance pay is properly includable as income." Judge Kavanewsky further held that even if the severance payments were not includable as income "the court may consider whether or not there are facts which rebut the presumption of the guidelines, causing the guidelines' application to be `inequitable or CT Page 450-S inappropriate'". Judge Kavanewsky referred to the deviation criteria under C.G.S. § 46b-215a-3. In examining the deviation standards of the "financial resources available to a parent", Judge Kavanewsky felt that a lump sum severance payment would be a substantial asset and grounds for deviation when there was inadequate income. "Severance pay, if not income, is a capital asset which he did not have previously. To allow the plaintiff to avoid a support obligation when he has acquired a substantial liquid asset would be inequitable. Pezas v. Pezas, 151 Conn. 611,616 (1964); Hein v. Hein, 127 Conn. 503, 505 (1941)." Ponger,
supra 3.
Judge Harrigan in Fahy v. Fahy, 7 CSCR 1111,1992 Ct. Sup. 8399, September 3, 1992 (Harrigan, J.) discussed child support obligations under the Child Support Guidelines for the defendant father who was totally disabled and receiving $1,053 monthly in Social Security Disability benefits. The minor child also received $81 a week from SSI. Judge Harrigan said "the issue presented to the court is the determination of how the social security benefits shall be handled in calculating the child support due the custodian parent after giving consideration to the social security disability payments." In considering how the $81 per week, paid directly to the child by SSI should be credited, Judge Harrigan characterized the Social Security Disability payments as monies "he has paid in advance for these CT Page 450-T benefits over the years (albeit mandatorily), they should be recognized as the fruits of his labor." Children Youth Servicesv. Chorgo, 491 A.2d 1374, 1377 (Pa; Super Ct. 1985). The Fahy
case cites with approval Potter v Potter, 404 A.2d 352, 356 (N.J. Ct. App. 1979). "The rationale underlying this view is that such payments are not gratuities but were earned by the wage earner during his period of employment and that they constitute in effect insurance payments substituting for lost earning power."
The Fahy case discussed Social Security Disability (SSI) benefits. The 1994 guidelines specifically exclude SSI benefits from income. Regardless, social security benefits are received as a right, once one meets the disability requirements. They are paid from social security contributions as an employee. Social security contributions are mandatory deductions from a person's earnings paid on a periodic basis out of wages. The deducted amount is determined by the amount of the wages. The contract issued by the New York Bar Association was not mandatory. Premiums have been paid, and the payments of those premiums were voluntary. The court therefore does not accept that these insurance benefits were earned by the husband during his period of employment. The court does not accept the Potter rationale.
On the other hand Fahy is instructive to this court. The insurance policy uses the phase "indemnity" in a majority of its CT Page 450-U references and sparingly uses the word "income". It is clear to this court that the purpose of the husband's disability insurance policy was to substitute for earnings that would otherwise have been earned by the attorney-insured during the period of sickness. Under the policy, disability is defined as "inability of the insured to perform the substantial, material duties of the insured's occupation". The policy payments end if the insured is regularly performing the duties of his occupation. It is clear that the intention of this disability insurance policy is "substituting for lost earning power". Fahy, supra 8400.
This court finds that it was the intention of the husband to purchase that the New York State Bar Association sponsored INA disability insurance policy to provide for family funds in the event he became incapitated. Now, having become incapitated, he is presently receiving periodic funds which are a substitution for that earning capacity. The disability policy was known to the husband at the time he signed the 1986 agreement. He had been paying premiums for approximately two and half years by that time. The husband was represented by an attorney. The husband himself is an attorney and the mediation agreement was prepared by an attorney. It would have been very easy for the disability policy to be excluded from the formula in Article 3.1. Not having been specifically excluded, this court finds that it was the parties' intent to include any disability payments as income. CT Page 450-V
"Net Subsistence Amount" is defined as "income from any and all sources, both earned and unearned". Disability income is clearly unearned. The husband's testimony that he would only have to pay child support when he was gainfully employed is self serving. The clear statement in the agreement that "from any and all sources both earned and unearned" belies the husband's claimed intent. Therefore, this court concludes that the disability insurance payments received from the INA policy is "income from any and all sources" as defined as in Article 3.1 of the agreement. The $800 per week is "Net Subsistence Amount". The $800 per week exceeds $15,000.00 per year. The husband is financially able to pay child support under the agreement and decree and has been during his receipt of the $800 per week disability insurance payments.
The Child Support Guidelines are mandatory and were adopted to insure children adequate financial support. Turner v. Turner,219 Conn. 703, 713-16 (1991). The court has limited discretion in deviating from the Guidelines. Favrow v. Vargas, 222 Conn. 699
(1992). Expenses of a non-custodian parent including medical bills are not sufficient under the Guidelines for a deviation by and of itself. Favrow v. Vargas, supra 714. Excluded from the Guidelines from gross income are "federal, state and local public assistance grants". This exclusion does not apply to a private CT Page 450-W disability insurance policy. Private disability insurance policies are not contained within the gross income inclusions in subsection (vii) "social security, veteran's, unemployment, and workers' compensation, retirement, and pension". It is of note that the list of inclusions in subparagraph (vii) includes public and private sources as well as mandatory and contract sources. There is a catchall phrase at the end of that subparagraph "and other benefits". The word "benefit" is broadly defined; "with a contribution to prosperity; whatever adds value to property; the acquisition of a legal or equitable right which would not otherwise be entitled; anything which adds to the advantage or security of another." Ballentine's Law Dictionary, 3rd Edition,1969.
The inclusive definition section of the Child Support Guidelines states "Gross income includes, but is not limited to". The inclusion subparagraph (xi) includes "unearned income from all sources" as part of gross income. The intention of the Guidelines to define income expansively is clear. The court, therefore, concludes that the disability policy in question, which is a substitute for the income that would have been earned by the attorney-insured except for his sickness, is gross income under the Child Support Guidelines.
The court finds support for the conclusions it has reached. CT Page 450-XStevens v. Stevens, 1995 Ct. Sup. 1890, March 2, 1995 (Teller, J.) considered the husband's private disability insurance benefits and ordered that the alimony order shall be secured by immediate garnishment of the disability income. Wilkinson v.Wiegand, 14 CLR 65, 1995 Ct. Sup. 3606, April 7, 1995 (Santos, J.) held that a wage withholding order for child support could be applicable to disability insurance payments on the basis that disability insurance payments are earnings and are not exempt from wage withholding under Connecticut General Statutes §52-362 (b). That statute dealt with execution on wages after judgments for support. Earnings under the statute is defined as "any debt accruing to an obligor by reason of his personal services, including any compensation payable by an employer to an employee for such personal services whether denominated as wages, salary, commission, bonus or otherwise". C.G.S. § 52-362 (a)(3).
Exempt from execution are "health and disability insurance payments". C.G.S. § 52-352b(e). The court held that "a portion of the defendant's disability insurance payments are susceptible to wage execution pursuant to Connecticut General Statute §52-362 (b)". Judge Fineberg considered disability benefits currently being received by one of the parties in an alimony and property dispute. Schreiber v. Gallagher, 1995 Ct. Sup. 8842, August 8, 1995 (Fineberg, J.). Judge Harrigan likewise orders disability payments to be used to make the payments on the mortgage inPereira v. Pereira, 1992 Ct. Sup. 4849, May 21, 1992 (Harrigan, CT Page 450-Y J.). Judge Harrigan in Smith v. Smith, 1991 Ct. Sup. 2039, March 28, 1991 (Harrigan, J.) considered in a Motion for Modification the income received by the wife from a combination of alimony, social security disability and disability insurance payments in modifying the financial orders.
Judge McWeeny in Lovallo v. Guerrera, 6 CSCR 459,1991 Ct. Sup. 2900, April 11, 1991, in a palimony case considered the receipt by the injured defendant of social security disability insurance benefits. Judge McWeeny reimbursed the plaintiff because the defendant breached his contractual agreement by failing and refusing to reimburse the plaintiff for a portion of household expenses for the period he was incapitated. In Merrittv. Merritt, 1991 Ct. Sup. 8550, October 7, 1991 (Ballen, J), the husband had income from the United States Navy, social security, a retirement from his employment pension, and a $99 per week from a disability insurance policy. Judge Ballen entered financial orders based upon a portion of the disability insurance income.
Having made the initial determinations requested by the parties, this court refers this matter to the clerk's office for assignment for further evidence concerning the remaining issues as to the Motion for Contempt and Motion for Modification. Among those issues would be the following considerations: (1) Whether any payments made by the defendant on a voluntary basis for the CT Page 450-Z last number of years have been applied to his child support payments under Article 3.1 of the agreement: (2) Whether or not the wife's delay in requesting child support for almost ten years from the date of decree by the plaintiff wife amounts to latches; (3) Whether the wife has prepared the proper "accurate financial accounting" of all child rearing expenses as she was required in paragraph 3.1 of the agreement; (4) What other factors determine if the husband is "financially able" to meet his support obligations under Article 3.1; (5) What is "one half of the actual cost of child rearing expenses that are reasonable and necessary for any sum of money available to him over and above the `Net Substitence Amount' ($15,000 per year);" (6) What is the appropriate credit to be given to the husband for his payment of alternate expenses in lieu of child support; (7) Whether the actions of the wife amount to a lack of bad faith and whether it is a defense to a contempt motion. Stock v. Stock, FA 96-013356, September 15, 1996 (Harrigan, J.).
TIERNEY, J.